# Hiram Gould *et al.*

## *v.*

# Mary E. Steinburg.

1. Fraudulent conveyances—*absolutely void as to creditors.* Deeds made in fraud of creditors are, under the statute, absolutely void as to creditors and subsequent purchasers in good faith; and a creditor of the grantor in such a deed may, after a levy upon the land, and sale and sheriff's deed

to him, file a bill in equity, and have such fraudulent deeds set aside as clouds upon his title acquired by the sheriff's deed to him.

2. SAME—*when purchaser under execution acquires title, notwithstanding prior deed.* Where a deed is made in fraud of creditors, it is absolutely void as to such creditors, and the title remains in the grantor in such fraudulent deed, and will pass to the purchaser at a sale under an execution against such grantor, notwithstanding such fraudulent deed.

APPEAL from the Circuit Court of DuPage county; the Hon. JOSIAH MCROBERTS, Judge, presiding.

Mr. W. H. RICHARDSON, and Mr. CHARLES BLANCHARD, for the appellants.

Mr. R. E. BARBER, and Mr. B. M. MUNN, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

Before 1859, Hiram Gould had executed seven notes, jointly with one Richerson, for liabilities of Richerson. He at that time occupied a large farm in Will county, to which he had unincumbered title. In November, 1859, he conveyed these lands, by two separate deeds, to one Jackson, his brother-in-law. These deeds were recorded December 1, 1859. Afterwards, judgments were entered of record in the circuit court of Will county, against Richerson and Hiram Gould, upon some of these old notes, execution was sued out on these judgments, and parts of this property levied upon and sold as the property of Hiram Gould, and sheriff's deeds, in due time, were made to appellee on these sales. These judgments were entered in 1867 and 1868, and the sheriff's deeds were made before the filing of this bill in May, 1870.

The bill charges, that the conveyances to Jackson were fraudulently made, to delay and hinder creditors, and asks to have them set aside. By an amendment of the bill, it is charged that, in 1861, Jackson and his wife reconveyed these lands to Hiram Gould, and that this deed was fraudulently altered by changing the name of the grantee in the deed, "Hiram Gould," into the words "James Gould," and that the deed was fraudulently kept from the records until after the filing

172      Gould *et al.* *v.* Steinburg.      [Sept. T.

Opinion of the Court.

°of this bill, and then recorded in its changed condition, and the bill asks to have removed the cloud upon complainant's title, arising from the alleged alteration of this last deed, and from the recording of the same, as an apparent conveyance of the lands in question to James Gould.

Answers were filed, denying all fraud in the deeds by Hiram Gould and wife to Jackson, and insisting that the deed of 1861, made by Jackson and wife, was originally made to "James Gould," and never did contain the name of "Hiram Gould" as grantee.

Proofs were taken and heard, and the circuit court set aside all these deeds as fraudulent, and declared the title to the lands mentioned in the sheriff deeds to be in appellee. Hiram and James Gould bring the record here by appeal.

The testimony is very contradictory, and after a careful review of it, we can not say that the decree is not sustained by the evidence.

Some of the witnesses were examined in open court, at the hearing, and testified in the presence of the circuit judge, and were examined by him.

The case turned upon the truth of that oral evidence, and was decided against that testimony. Of the trustworthiness of these witnesses, the circuit judge had much better means of judging correctly than this court can have.

It seems to have been his judgment, that the conveyances of 1859 were made for a fraudulent purpose, and were, therefore, void against creditors, and that James Gould, to say the least, was not a *bona fide* purchaser without notice.

The preponderance of the testimony as to the alteration in the deed of 1861 of the name "Hiram" to that of "James," seems in favor of the allegation that it was altered. The original deed (by the agreement of the parties) is, however, brought here for our inspection, and on its face it seems to have been tampered with. If it is true that this deed contained the name of James as grantee when it was executed and acknowledged, it would seem probable that Enoch Jackson, the justice who certified the acknowledgment, and Delancy Jackson, one of

the makers, were, at the time of the making of the deed, led by some act to suppose that the deed contained the name of " Hiram " as grantee, although the name of the grantee then written in the deed was in fact " James," and that the deed was not carefully scrutinized by the Jacksons at the time.    If this be true, however, James Gould must have been a party to the deceit, for he testifies that he was present when the deed was drawn up, and that it was delivered to him.

While the real truth in this case is not made absolutely certain by the proofs, we find no good ground to say that the judge of the circuit court did not decide according to the weight of the evidence.

There are many minor features of these transactions developed in the record, which tend to the conclusion that the deeds of 1859 and the deed of 1861 were all for the purpose of delaying and defrauding the creditors of Hiram Gould, and that James Gould became a party to the fraud, so as to charge him therewith.

It is contended that it is too late for appellee to ask for the relief sought, after having sold the property and taken a sheriff's deed.    This position is not tenable.    By the statute, deeds made in fraud of creditors are absolutely void as to creditors and subsequent purchasers in good faith.    This is not a bill to subject to sale an equity not otherwise subject to sale on execution, but a bill to quiet title, by declaring void an apparent conveyance, which, though void, is a cloud upon the title.

These deeds being void for fraud, the legal title remained in Hiram Gould until it was divested by the sheriff's deed.

The decree must be affirmed, with costs.

*Decree affirmed.*

Mr. JUSTICE SCOTT:  On inspection of the original deed, it appears to me to have been written at the same time, by the same hand, and with the same ink.    Clearly, the alteration, whatever it is, was made before the succeeding word was written.