NICHOLAS B. RAPPLEYE

*v.*

THE INTERNATIONAL BANK.

1. CREDITOR'S BILL—*preference of lien in equity.* It is a well established principle that where a creditor has, through the instrumentality of a court of equity, sought out and discovered the property of his debtor, which he had before been unable to discover and seize upon by execution at law, he becomes entitled to a preference over other creditors to have his judgment first satisfied.

2. Where, after the execution of a deed of trust by a debtor to hinder, delay and defraud his creditors, two judgments were recovered against him, and the senior judgment creditor made no levy on the equity of redemption, and took no steps to avoid the fraudulent trust deed, and the junior judgment creditor, after levy upon the property, filed his bill in equity to have the deed of trust set aside, which resulted in a release of the trust deed, it was *held,* that the junior creditor, by his superior diligence in discovering the fraud and causing the release of the trust deed, was entitled to a preference over the other judgment creditor to the amount of the sum secured in the trust deed.

3. JUDGMENT—*no lien on land fraudulently conveyed.* A judgment is no lien on lands fraudulently conveyed by the debtor before the judgment was recovered. The debtor in such case has no equitable or legal title upon which a lien can attach.

4. FRAUDULENT CONVEYANCE—*whether void, or only voidable—former decisions.* It was said in *Gould* v. *Steinburg,* 84 Ill. 170, that "by the statute deeds made in fraud of creditors are *absolutely void* as to creditors." These words are not to be understood in their literal sense, but in connection with the matter under discussion, and as having no different meaning from the language used in *Lyon* v. *Robbins,* 46 Ill. 279, where it was said, such deeds "are not void, but only voidable."

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

On the 7th day of November, 1871, Charles Sonne executed a trust deed to Francis A. Hoffman, of the south half of lots 22 and 23 in Egan's south addition to Chicago, in the county of Cook; which trust deed purported to secure the payment of a promissory note made by said Sonne, bearing even date with the trust deed, for the sum of $2500, payable to the order of Frederick W. Jaeger one year after its date, with interest. The trust deed was duly recorded. On the 16th day of October, 1873, Nelson Tuttle recovered a judgment against Sonne in the Superior Court of Cook county for $1550 and costs, on which execution was issued October 31, 1873; no return appears on the execution. On April 27, 1874, an alias execution was issued on the judgment, and returned no part satisfied and no property found July 25, 1874.

On the 26th day of May, 1874, the International Bank recovered a judgment against Sonne in the circuit court of Shelby county for $3791.62 and costs. On the 5th day of August, 1874, an execution was issued upon the latter judgment, directed to the sheriff of Cook county to execute, which was levied upon the premises above described, and on the 4th day of November, 1874, the execution was returned no part satisfied, and the property not sold by order of plaintiff's attorney. The indebtedness upon which the judgment of the International Bank was recovered existed before the trust deed was made. On the 14th day of August, 1874, the certificate of the levy made under the execution issued upon the judgment of the bank, was filed in the recorder's office of Cook county and recorded therein.

On the 29th day of January, 1875, the International Bank filed its original bill in said Superior Court against Sonne, Jaeger and Hoffman, to have the trust deed set aside and the premises subjected to the payment of the judgment of the bank, on the ground that the trust deed and note were given

without consideration and with the intent to delay, hinder and defraud the creditors of Sonne. On the 5th day of March, 1875, proceedings in bankruptcy were instituted against Sonne, and his assignee in bankruptcy appointed, by reason whereof proceedings in the Superior Court were suspended.

On the 2d day of March, 1875, the said trust deed was released by Hoffman, the trustee, and on that day the judgment above mentioned, of Tuttle against Sonne, was assigned to Nicholas B. Rappleye. Rappleye afterward caused a *pluries* execution to be issued upon the judgment, under which the sheriff of Cook county levied upon the premises in question, and advertised the same to be sold on the 21st day of May, 1875.

Thereupon the International Bank filed a petition in the bankruptcy proceedings setting forth among other things that it was its intention to file a supplemental bill in its suit in the Superior Court, and praying that Rappleye and the sheriff might be restrained from selling said premises until the question of priority between the bank and Rappleye could be determined, and praying leave of the bankruptcy court to proceed with its suit in the Superior Court. This leave was refused, but an order was entered restraining Rappleye and the sheriff from selling the premises until the further order of the court. On the 31st day of July, 1875, the assignee sold the interest he had in the premises to Rappleye, which sale was confirmed by the court of bankruptcy, and the restraining order against Rappleye and the sheriff was thereupon dissolved and leave given to the bank to proceed with its suit in the Superior Court.

On the 2d day of August, 1875, the International Bank filed its supplemental bill in the Superior Court, setting forth the foregoing, and alleging further that by reason of the filing of the original bill, the fraudulent character of the trust deed had been discovered and it caused to be released, claiming that by reason thereof, as to the interest or estate conveyed by the trust deed, it had gained a priority over the senior judg-

ment so assigned to Rappleye, and praying, in effect, that the premises might be sold free of incumbrances, the proceeds of sale be paid into court, and that out of the proceeds $2500, the amount of the trust deed, might be first applied upon the judgment of the bank; and an injunction was asked to restrain Rappleye and the sheriff from selling until the question of priority between Rappleye and the bank could be determined.

A temporary injunction was granted. Answers were filed, proofs taken, and upon final hearing the court found that the trust deed was fraudulent, that the bank by filing its original bill discovered the fraudulent character of the trust deed and caused it to be released, and that by reason of such diligence the bank had gained a priority of interest in the premises over the senior judgment of Rappleye to the extent of $2500, the amount of the trust deed so removed from the premises. From the decree Rappleye appeals to this court.

Mr. CHARLES L. EASTON, for the appellant.

Mr. JOHN P. AHRENS, and Messrs. ROSENTHAL & PENCE, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

No point is made in the argument for appellant as to the correctness of the finding of the court below in regard to the facts, that the trust deed was made with the intent to delay, hinder or defraud the creditors of Sonne, and that the bank by filing its original bill discovered the fraudulent character of the trust deed and caused it to be released. And from an examination of the evidence we see no reason to question the propriety of the finding in this respect.

It is the rule of priority the court adopted and applied as arising upon the above facts, which is insisted upon as being erroneous.

It is a well established principle, when a creditor has, through the instrumentality of a court of equity, sought out

and discovered the property of his debtor, which he had before been unable to discover and seize upon by execution at law, that he becomes entitled to a preference over other creditors to have his judgment first satisfied. *Gordon* v. *Lowell*, 21 Me. 257.

In *Edmeston* v. *Lyde*, 1 Paige, 639, in reference to this subject of gaining a priority, the court say: "The creditor whose legal diligence has pursued the property into this court is entitled to a preference as the reward of his vigilance." "If the creditor whose execution is first returned unsatisfied, pursues the race of legal diligence by the commencement of a suit here, he will obtain the reward of his vigilance; but if he abandons the pursuit, or lingers on the way before he has obtained a specific lien, he has no right to complain if another creditc~ obtains a preference by superior vigilance."

In *Smith* v. *Lind*, 29 Ill. 30, this court said: "There is certainly some merit in searching records, discovering property, investigating title, and procuring sale of it, and all at the creditor's costs and expense, by which he ought to profit. * * * Both these judgment creditors were in a position to use diligence—one only encountered the labor and expense. To him should be the reward."

In *Lyon* v. *Robbins*, 46 Ill. 279, a junior judgment creditor caused to be set aside an absolute conveyance made before either judgment, on the ground of its being fraudulent as against creditors, and the question was, whether the junior judgment creditor thereby gained a priority over the senior judgment creditor. The court say: "The deed of Miller (judgment debtor) to Williams was not void, but only voidable. It vested the title in the grantee, subject to be divested by the action of creditors. It was valid as against Miller, and a conveyance by Williams to an innocent purchaser, for a valuable consideration, would have been valid as against all persons. There was then, at the time these judgments were rendered, no estate in Miller to which their liens attached in the order of their rendition, and although the judgment of plaintiffs in error was junior

in date to that of defendants, yet the former having set aside the title of Williams, subjected the premises to sale, and obtained a master's deed before the defendants made any move in this direction, it would now be very inequitable to permit the defendants to come forward and sweep away the fruits of their superior diligence."

We do not see why this case of *Lyon* v. *Robbins* does not decide the present case. It is not denied that appellant's judgment was a lien on the equity of redemption of Sonne in the premises, but this was a lien on the land, subject to the incumbrance of the trust deed. · *Pahlman* v. *Shumway*, 24 Ill. 127. The lien, however, according to this case of *Lyon* v. *Robbins,* did not extend to the interest or estate conveyed by the trust deed, notwithstanding the trust deed was fraudulent and void as to Sonne's creditors. The circumstance of the fraudulent conveyance in the former case being an absolute conveyance, and in the present case a trust deed, does not vary the application here of the principle there declared. The difference in that respect in the two cases is, that in the former the grantor parted with the whole of his interest in the premises, leaving no part upon which the lien of a judgment could attach; and in the latter, the grantor parted with only a portion of his interest, leaving the remainder, the equity of redemption, for the lien of the judgment to attach upon.

There was then, according to the case of *Lyon* v. *Robbins,* at the time of the rendition of appellant's judgment, and of the recording of the certificate of levy of appellee, no estate in Sonne, except the equity of redemption, to which these liens attached in the order of their accruing. The trust deed was not void, but only voidable. It vested the estate thereby conveyed in Hoffman for the benefit of Jaeger, subject to be divested by creditors. It was valid as against Sonne. Had the deed of trust been foreclosed, and the property bought by a *bona fide* purchaser, he would have acquired a valid title as against both appellant and appellee. Appellee has prevented that from being done. It has caused, by its suit brought, the

26—93 ILL.

trust deed to be released. The holder of the other judgment did nothing whatever in that direction. He was content in having his execution returned no part satisfied and no property found. The equity of redemption, seemingly, was not regarded as of sufficient value to have it sold under execution, as the judgment creditors rested without having it done. Although appellant might have proceeded and have avoided the trust deed, and have subjected the estate thereby conveyed to the satisfaction of his judgment, or have had the lots sold on execution, he did not choose to assume that burden or expense. Appellee then assumed the undertaking of avoiding the trust deed, and succeeded in effecting the removal of the incumbrance, encountering all the expense and labor thereof. It is through this proceeding of appellee that this estate conveyed by the trust deed has been secured for application to the satisfaction of these judgments. Appellant now comes forward to appropriate to himself all the benefit. It does not seem just. And we think, under the equitable doctrine which courts apply in analogous cases, and the decision in *Lyon* v. *Robbins,* appellee is fairly entitled to a preference as a reward of its diligence. It is the legal maxim, *vigilantibus non dormientibus jura subveniunt.*

Appellant makes the point that there is a difference in the phraseology of the statute of 1845, the one in force when *Lyon* v. *Robbins* was decided, as to the lien of a judgment on real estate, and the one on that subject passed in 1872, and since in force, which should distinguish that case from the one at bar. The difference insisted on is, that the latter statute makes a judgment a lien on all equitable interests in lands, while the former, with only a limited exception not applying to such a case as this, made the judgment a lien on only the legal estate. And it is assumed that when a debtor makes a conveyance of land in fraud of creditors, there yet remains in him an equitable estate in the land; and it is contended that there is now, under the present statute, a judgment lien on this equitable estate which there was not under the previous statute.

It is a mistaken notion that after the making of a fraudulent conveyance as to creditors, there remains in the fraudulent grantor an equitable estate in the land conveyed. If this were so, he could sell and convey to another such estate. But the fraudulent conveyance is good as against the grantor, and as respects himself vests all his interest in the land, equitable as well as legal, in the grantee. The deed is voidable by creditors, and the estate conveyed is subject to be divested by their action. There is no such distinction as that of equitable and legal estate applicable to the subject. When the creditor proceeds in a court of equity it is not upon the idea of subjecting an equitable estate only which the debtor has in the land, but it is to avoid the fraudulent conveyance, which is voidable by him. It is no more an equitable than a legal estate which he subjects to the satisfaction of his debt. Were there, after a conveyance in fraud of creditors, an equitable estate in the land in the debtor, upon which the lien of a judgment would attach, then, while the judgment subsisted, there would not be the capability in the fraudulent grantee to sell and convey an indefeasible title in the land to a *bona fide* purchaser for good consideration. But of this power there is no doubt.

This difference then between the two statutes, in the respect of the latter making a judgment a lien on equitable estates in land, does not affect the applicability of the decision in *Lyon* v. *Robbins* to the present case.

The decree will be affirmed.

*Decree affirmed.*

Mr. Justice Scott, dissenting:

On the 7th day of November, 1871, Charles Sonne executed a trust deed to Francis A. Hoffman, on the premises involved in this litigation, to secure an alleged indebtedness to Frederick W. Jaeger of $2500, evidenced by a promissory note of the same date as the trust deed, payable to his order one year after date, with interest. The trust deed was filed

in the proper office on the 10th day of the same month and was duly recorded.

On the 16th day of October, 1873, Nelson Tuttle recovered a judgment in the Superior Court of Cook county, against Charles Sonne, the grantor in the trust deed, for $1550 and costs, upon which judgment he caused an execution to be issued within one year of the date of the judgment, and had the same placed in the hands of the sheriff.

On the 26th day of May, 1874, the International Bank recovered a judgment against the same Charles Sonne in the circuit court of Shelby county, in this State, for $3791.62; and afterwards, on the 5th day of August next following, caused an execution to be issued on the judgment, directed to the sheriff of Cook county, where the property is situated, which execution the officer levied upon the property described in the trust deed; and on the 14th day of August, 1874, a certificate of the levy made under the execution, was filed for record in the recorder's office of Cook county. That execution was afterwards, on the 14th day of November, of the same year, returned by the sheriff in no part satisfied, and the property levied on not sold.

In January, 1875, the International Bank filed its original bill in the Superior Court, making Charles Sonne, Frederick W. Jaeger, Francis A. Hoffman and others, defendants, in which was set out its judgment recovered in the circuit court of Shelby county, the issuing and returning of the execution, with the officer's return, the filing and recording of a certificate of levy, and charging that the trust deed and the note it purported to secure were given without consideration, and were made to hinder and delay creditors of Charles Sonne, of whom complainant was one, and asked to have the trust deed set aside and the premises subjected to the payment of its judgment. On the 2d day of August, 1878, complainant filed a supplemental bill, setting forth the substance of the original bill and some additional facts that had since occurred, among which were the assignment of the Tuttle judgment to

defendant Rappleye, the release by Hoffman on the 2d day of March, 1875, of the trust deed, and the institution of proceedings in bankruptcy against the debtor, Charles Sonne, and the appointment of a receiver.

After Rappleye became assignee of Tuttle's judgment against Sonne he caused a *pluries* execution to be issued on it and levied upon the property described in the trust deed, and advertised the same to be sold on the 21st day of May, 1875. Thereupon the International Bank filed a petition in the bankrupt court, setting forth its intention to file a supplemental bill in its suit in the Superior Court to enjoin Rappleye and the sheriff from selling the property until the priority between the bank and Rappleye could be determined, and asked leave to proceed with the suit. That leave was denied by the bankrupt court on account of the interest the assignee had in the bankrupt's estate, but an order was entered restraining Rappleye and the sheriff from selling the property until the further order of court. On the 31st day of July, 1875, the assignee sold the interest of the bankrupt in the property to Rappleye, and on the confirmation of the sale the court dissolved the restraining order against Rappleye and the sheriff, and granted leave to the bank to proceed with its suit in the Superior Court.

Some of defendants filed a joint answer disclaiming any knowledge of the matters contained in the bill, but all the principal defendants filed separate answers, both to the original and supplemental bills. The substance of the answers of Sonne and Jaeger is, that the trust deed and note were executed in good faith with a view to secure Jaeger in such future advances as he might make to Sonne, who was in failing circumstances, to enable him to effect a compromise with his creditors. But as Jaeger was unable to furnish the amount of money required, all efforts to effect a compromise were abandoned. Jaeger only furnished Sonne, under the agreement, $375, and as that was afterwards adjusted, it is alleged the trustee, long before the filing of the original bill,

was directed to release the trust deed. Replications were filed to the answers, and on the hearing the court decreed the relief asked in the supplemental bill, and defendant Rappleye brings the case to this court—none of the other defendants complaining of the decree.

The only principal fact in the case that is controverted is as to the time when Hoffman, the trustee, was directed to release the trust deed—whether before or after the filing of the original bill. Both Sonne and Jaeger declare such directions were given when the effort to effect a settlement with the creditors of Sonne was abandoned, which was long anterior to the filing of the original bill; but Hoffman's recollection is, it was not until after he was served with process in this case. Be that as it may, it is certain, from the testimony, the parties, long before the bill was exhibited, had abandoned the idea of obtaining money on the trust deed, and it was in fact released before the supplemental bill was filed. The note by its terms had become due, and both note and trust deed remained in the hands of the maker or the payee of the note. It does not appear the trust deed was ever delivered to the trustee until it was sent to him to be released.

It is claimed by the bank, in its supplemental bill, that by reason of filing its original bill it discovered property which could not be reached by an execution at law, viz: the interest or estate conveyed by the trust deed, and thereby as to such property it gained a priority over the senior judgment in the hands of Rappleye. Under our statute the equity of redemption of the mortgagor in the mortgaged premises is an estate subject to levy and sale on execution. All the interest the mortgagor has in the premises may be sold, and the purchaser at the execution sale will stand in his shoes if the title shall mature in him. That is the case here, and there was no need of the interposition of a court of equity to discover and subject the equity of redemption which the debtor had in the property to levy and sale. It could be reached by an execution at law.

Insisting, as the bank does, the trust deed from Sonne to Hoffman was inoperative as to creditors of the former, and that by its original bill it discovered the fraudulent character of the trust deed and caused it to be released, it invokes the aid of that principle as declared in *Lyon* v. *Robbins*, 46 Ill. 297, and other cases in this court, that where a creditor has by the aid of a court of equity discovered property of his debtor that could not be reached by an execution at law, the rights of older creditors will be postponed for his benefit as a reward for his superior vigilance. But it is not perceived how this principle can be so applied as to aid complainant's cause.

As we have seen, the debtor had an interest in the property, —the equity of redemption—that was subject to levy and sale on execution, and as to that interest, whatever it was, whether great or small, the judgment in favor of Tuttle was the superior lien. This proposition can not be controverted. If it can be said complainant discovered anything in this case by his original bill, it would be the extent of the interest of the debtor in the property in contention. It was known to all persons who may have examined the records, that the debtor had an interest or estate in the property, no matter whether the trust deed was valid or invalid, that was subject to levy and sale on execution at law, and it could not be said complainant discovered that fact. The fact that property of a debtor has been discovered, necessarily implies it had been concealed. That is not the case here. There had been no concealment of any property by the debtor from the bank, and it is difficult to appreciate how it could have undertaken a race of diligence in good faith. The trust deed that was said to have operated as a covering for the debtor's property was made to Francis A. Hoffman, who, at that time, had the management of the affairs of the bank. It is proved the filling up of the trust deed is in the handwriting of Hoffman, and that he was present at its execution. The bank debt existed prior to that time and was then over due, and as the debtor was a relative of Hoffman it is but reasonable to suppose he knew all about

the transaction and for what purpose the trust deed was made to him. The proof is, Sonne was not pressed for his indebtedness to the bank, on account of his relationship with Hoffman. It is true Hoffman had ceased to have the management of the affairs of the bank when the original bill was filed, but the corporation must be understood to have had the same knowledge he had when he was in charge of its affairs, and it certainly did not lose it on his ceasing to act. It can not be gainsaid the bank knew of the existence of the trust deed from the day of its execution, as its managing officer had prepared it, and from his relations with the grantor he must have known whether it was honest or fraudulent. How this bank can by filing a bill discover what it had known through its principal officer from the beginning, and make that fact the basis for having the rights of creditors with prior liens upon the property postponed to his junior lien, is a proposition that has no foundation in law or in justice. It is a transaction in which complainant's principal officer participated, and complainant ought not to be permitted to say it•was unlawful and done with a design to hinder and delay creditors, and then make that fact the ground of equitable relief in its behalf.

The case made by the bill is not within the principle of the cases cited in this court. Those cases all proceed on the theory the diligent creditor by his bill has discovered property that was not subject to an execution at law, as, where the debtor had fraudulently placed the title in another for the purpose of concealing it from his creditors. This bill makes no such case. There was no concealment of what the debtor had done, from complainant. The slightest inquiry of Hoffman or of either of the other parties would have revealed the fact that nothing was due on the note secured by the trust deed, and that the maker and payee both desired to have the deed released. He had selected its managing officer as his trustee with his knowledge and consent, and placed the legal title to his property in his hands. It seems most unreasonable to call that act on the part of the debtor, concealing his

property from complainant, and making it the foundation of a bill for the discovery of assets for which he should be rewarded as for superior diligence.

Before the supplemental bill was filed in this case, Rappleye had received a conveyance of the property from the assignee in bankruptcy, but upon what terms is not made known. It may have been subject to all prior liens in the order they existed, and if so, that would not afford complainant equitable grounds for relief against parties having prior and superior equities in the property.

In my opinion the decree should be reversed and the original and supplemental bills dismissed.

WALKER, J: . I am unable to concur in the conclusion reached in this case by a majority of the court, as the bank did nothing, in my judgment, to give it any preference.

Subsequently, upon petition for a rehearing, the following additional opinion was filed:

Mr. JUSTICE DICKEY:

It is insisted by petitioner that the logic of the opinion of the court in this case is in conflict with what was said in *Gould* v. *Steinburg*, 84 Ill. 170.

This is a misapprehension. True it was there said, that " by the statute deeds made in fraud of creditors are absolutely void as to creditors," and in the opinion in the case at bar the language of this court in the case of *Lyon* v. *Robbins*, 46 Ill. 279, is quoted with approval, wherein it is said : " The deed of Miller," (the judgment debtor,) " was not void but only voidable."

The words of an opinion must be read and considered in view of the matter under discussion. The words in the case of *Gould* v. *Steinburg, supra,* would have been less liable to misapprehension if qualified by confining them to the class of cases to which that belonged. It would have been less liable to misapprehension if it had been said in that opinion that such deeds by the statute " are absolutely void as against

creditors when set up by the grantor or grantee therein." Or it might well have been said in *Gould* v. *Steinburg,* (as in *Lyon* v. *Robbins, supra,*) " such deeds are not void but only voidable. They vest title in the grantee subject to be divested by the action of the creditors ; and in this case, (*Gould* v. *Steinburg,*) the action of the creditors on levy and sale of the land upon execution, divested the grantee of the title, and hence such deed as between these parties must be treated as absolutely void *ab initio.*" The practical effect of each of these forms of expression is the same as to the matter under discussion. While the phrases of the two opinions are at variance, the meanings are entirely in harmony.

The petition for rehearing must be denied.