## H. D. HARDIN ET AL.

### v.

## HARRY W. SISSON.

*Sales—Chattels—Delivery—Rights of Creditors—Attachment—Loss of Lien.*

1. A sale of personal property without delivery is effective against creditors of the seller, unless they take action to avoid it before the purchaser takes possession.

2. The lien of an attachment is lost if the officer making the levy, or his agents, fail to retain the custody and possession of the property.

[Opinion filed May 28, 1890.]

APPEAL from the Circuit Court of Warren County; the Hon. JOHN J. GLENN, Judge, presiding.

Messrs. POTTER & MACDILL, for appellants.

Messrs. KIRKPATRICK & ALEXANDER and A. P. HUTCHINSON, for appellee.

UPTON, P. J. February 20, 1889, appellants commenced proceedings in attachment in the Circuit Court of Warren County, against Myron H. Giddings, for the sum of $448.07. The writ of attachment issued on the same day, and was, by the sheriff, levied upon the property in question, consisting of about 60 tons of hay, 100 bushels of corn, 50 bushels of oats, two colts coming two years old, one yearling heifer, one cow, together with some farming implements, etc. The property so levied on was upon a farm which had theretofore been owned and was then occupied by Giddings or his tenants, situate near Monmouth, Giddings and his family residing in the village or city of Monmouth, about one mile distant from the farm.

At the time of the levy two men were living in the Giddings house, upon the farm, with their families, one of whom,

Wilkinson, as tenant, was not in any way employed by Giddings; the other, Meyers, was in the employ of Giddings by the month, in caring for the stock on the farm. The sheriff did not remove the property when he made the levy thereon, but by the direction or with the assent of appellants, the attaching creditors, placed it in the custody of Wilkinson, who, by direction of the sheriff, fed the stock with the hay and grain levied upon.

After the attachment levy, Giddings used, as he had occasion, a portion of the property so levied upon, with the consent of the sheriff, and also fed out and used for his own benefit a portion of the hay and grain so levied upon, without objection, for which use of property and consumption of feed Giddings, as he testifies, " put up " $100. Giddings also testifies that he had the entire control of the business at the farm, was there every day, and it seems certain, from the evidence, that he employed and paid Meyers for his labor while he was in charge of the premises and the property levied upon, from the 28th of February, 1889, until the 18th day of March, 1889.

On the 28th of February, 1889, Wilkinson left the premises and the property levied upon—except what had been used or removed by Giddings therefrom—and without further act, direction or consent of the sheriff or of any one in his behalf, the care, custody and control of the property levied upon was left remaining on the premises, and was thereafter, by the direction of Giddings, and at his expense, fed from the hay and grain so levied upon by Meyers, the employe of Giddings.

On the 18th day of March, 1889, Meyers abandoned and left the farm, removed with his effects therefrom, leaving the property so attached thereon uncared for, without attendants, and the farm and house thereon unoccupied.

On the morning of the 19th of March, Sisson, the intervenor, finding the premises unoccupied, as above stated, entered into and took possession thereof, with the personal property herein in question, under claim of ownership as hereafter stated, and from thence until the present has continued in possession.

At the May term, 1889, of the Circuit Court, to which the attachment writ was made returnable, Sisson, by leave of court, filed an interpleader in the attachment proceeding, therein claiming the property attached, pursuant to the statute.

Under this interpleader a trial was had, and to sustain the claim of right of property in Sisson, the intervenor, the fol lowing facts were sought to be established: That on the 2d day of February preceding the levy, Sisson being the owner of a farm in the State of Nebraska upon which was consider able personal property, consisting of stock, grain, hay and farming implements of considerable value, by a contract and conveyance in writing, exchanged his farm, with the personal property thereon, with Myron A. Giddings, for his farm in Monmouth, Ill., with the personal property thereon, being the property here in controversy, in pursuance of which con tract and conveyance Sisson delivered the possession of his farm and personal property in Nebraska to Giddings, and by the contract Sisson was to have possession of the farm and personal property so purchased of Giddings, in Illinois, on the 1st day of March, 1889.

In the latter part of February of that year, Sisson removed from Nebraska, with his family and effects, to Monmouth, to reside upon the farm so purchased in exchange, but for some pretext or another Giddings objected to giving possession at that time, and Sisson was unable to obtain possession of the farm or personal property until the 19th day of March, 1889, as hereinabove stated.

In the meantime the personal estate, if not the real, also, which Sisson had sold by the exchange to Giddings, in Ne braska, had been levied upon by the creditors of Giddings, and was afterward sold in satisfaction of the demands of Giddings' creditors.

At the time Sisson took possession of the Giddings farm and the property here in question, he had no notice that an attach ment had been levied thereon, or any attempt made to attach the same as the property of Giddings appearing in the record before us. Upon the foregoing facts as claimed by the inter-

venor, and concerning which there was but little substantial dispute, the trial of the right of property set up by the interpleader was had before a jury, who found the property in the intervenor, Henry W. Sisson, and after a motion for a new trial, the court entered judgment on that verdict, and an appeal was taken and is now before us for review.

We have examined the record with care, and are satisfied that the jury were fully warranted by the evidence in the finding of facts upon which to sustain the verdict, and that the verdict ought not to be disturbed unless the trial court erred in giving or refusing instructions which prejudiced the legal rights of appellants with the jury on the trial.

We need not examine in detail the several instructions complained of, for it will be seen that the determination of two or three legal propositions will cover all the errors complained of.

First. The main contention of the appellants, and the one upon which, as they insist, the case must be determined, put in their own language, is, "What issue can be determined in this proceeding?"

Appellants claim the only inquiry is whether the property attached was at *the time of the levy*, the property of the intervenor, and that inquiry must be limited to that time and none other. This contention we are not prepared to concede, at least to the extent claimed. In Marshall v. Cunningham et al., 13 Ill. 21, the court said: "In the trial of the right of property under our statute, the only question is whether the property levied upon belongs to the claimant.

"The verdict must be against him unless it affirmatively appears that he is the owner.

"He is bound to show that the property belongs to him and is therefore not subject to sale," etc.

This certainly does not support appellants' contention. The investigation in the court below was simply to determine whether the property in question belonged to the claimant, and whether it was or not subject to sale on the attachment levy. In that investigation it was practically conceded that as between the parties the exchange sale of the property in

question was *valid*, but as to the creditors of Giddings it was under the statute *invalid* without delivery of the possession by Giddings to Sisson.

It can not be disputed that as between the parties a sale or exchange of personal property, otherwise valid and perfected, is good without a delivery of the property sold or exchanged.

It was contended in the trial court, and that contention is renewed here, that inasmuch as our statute refers to a class of sales denominated fraudulent and void as to creditors, and that sales of personal property without delivery thereof by the seller to the purchaser are within that classification, the trial court erred in instructing the jury, by appellee's first instruction, in substance :

" If the jury find from the evidence that on the 2d day of February, 1889, claimant, Sisson, in good faith, and for a reasonable and valuable consideration, traded with Giddings for the property in controversy, then, although the jury may find from the evidence that by reason of Sisson's failure to obtain possession of the property at the time of its purchase from Giddings, the sale and purchase was, as against the creditors of Giddings, invalid or fraudulent in law, yet if the jury further find that after the levy of the attachment the officer making the levy left the property on the premises where found in the care or custody of one Meyers, the agent of Giddings, and that afterward, and on or about the 18th day of March, 1889, Meyers moved off the premises, leaving the property there in charge of no one in particular, and that it so remained until on or about the 19th day of March, when Sisson moved into the premises where the property then was, and that on moving on, said Sisson found the property on the premises, then the jury are instructed that the law is for the claimant, Sisson, and that the jury should so find."

If we correctly apprehend appellants' contention upon this point, it is, that the exchange sale of the property here in question, though otherwise complete and legal, was, in consequence of the non-delivery thereof to the claimant, absolutely void as against attaching creditors, and therefore an absolute nullity, of no force and effect whatever against the

creditors of the seller. We do not so understand the construction given the statute in question. In Rappleye v. International Bank, 93 Ill. 396, it was said that, "by the statute of frauds, deeds made in fraud of creditors are void;  *  *  * in the case of Lyon v. Robbins, 46 Ill. 277, we held the deed from Miller, the judgment debtor, was not void, but only voidable;  *  *  *  such deeds, by the statute, are not absolutely void.  *  *  *  They vest the title in the grantee subject to be divested by the action of the creditors by attachment or levy," etc. So in the case at bar the sale, if otherwise perfected, was valid between the parties without delivery of possession to the purchaser, but subject to be avoided by the creditors of Giddings, the seller, by attachment or execution levy, etc.

Without some action to avoid the sale by the creditor, before possession was obtained by the purchaser of the property purchased, such sale was as effective against such creditors as against the seller. Wait on Fraudulent Conveyances, Secs. 317, 418 and 426; Rappleye v. International Bank, *supra*.

Second. We have seen that some action must be taken by the creditor, to avoid the sale alleged to be invalid for nondelivery of the property sold ; it remains only to inquire, was the proceeding by attachment and levy upon the property in question, by the creditor of Giddings (the appellant), valid and effective for that purpose.

Section 14 of Chapter 11, Starr & C. Ill. Stats., provides: "The officer serving the writ (attachment) shall take and retain the custody and possession of the property attached, to answer and abide by the judgment of the court," etc.

The lien of an attachment is created by law on prescribed conditions, which must be strictly pursued. Waples on Attachment, 22, 544.

In order to maintain the validity of the attachment levy and the lien thereby created, the officer serving the attachment writ must take, *retain and continue* in the legal custody of the property levied upon. Waples on Attachment, 177, 544; Fairbanks v. Bennet, 52 Michigan R. 63; Carrington v. Smith, 8 Pick. (Mass.) R. 418.

Hardin v. Sisson.

In Sanderson v. Edwards, 16 Pick. (Mass.) 144, where an attachment had been levied upon certain personal property and it was placed in the hands of a keeper by direction of the plaintiff in attachment, the keeper went away, abandoned the possession and custody of the property and it was taken upon another attachment, the question arose between the officers making the levies, as to which had priority. The court held the lien of the first attachment and levy was lost; that in order to maintain the lien created by an attachment of personal property, the officer must, by himself or another, retain the custody of the property attached, etc. 1 Wade on Attachment, Sec. 164, and cases there cited, is to the same effect; Bridge v. Wyman, 14 Mass. 190. Taintor v. Williams, 7 Conn. 271. In the last cited case it was held that if the actual possession by the officer making the levy, by himself, his agent or employe, be *relinquished*, the *lien of the attachment levy terminated*. Baker v. Warren, Gray (Mass.), 527.

Flanagan v. Wood, 33 Vt. 332, is in many essential particulars like the case at bar, and fully sustains the ruling and instructions of the trial court.

In Pollard v. Sleeper, 28 Vt. 709, the court say the property then was in the possession of the hired man of the vendor, etc., and such possession must be regarded as the possession of the vendor. If we are correct in the foregoing premises, it must follow that the attaching creditor obtained no lien upon, or right to, the property in question, by the attachment levy, as against the claimant, Sisson, in consequence of the neglect on the part of the officer holding the attachment writ to take and retain possession thereof by himself, agent or servant, as required by law, but that he abandoned the same and thereby released the lien of the levy thereon, and the court below did not err in so holding, and that judgment is affirmed.

*Judgment affirmed.*