## Stanley S. Schaeffer, Administrator of the Estate of Frank Kerting, Deceased, Appellant, v. Albert J. Potzel et al., Appellees.

### Gen. No. 29,786.

1. JUDGMENTS—*dismissal binding until set aside or vacated.* Court having jurisdiction of subject matter and parties before it who according to its judgment were the proper parties, and having pursuant to their agreement dismissed the cause, the dismissal constituted an adjudication which was binding until set aside or vacated, though there was error in substitution of parties.

2. JUDGMENTS—*grantees of property after judgment of dismissal held bona fide purchasers.* Persons purchasing property after dismissal of cause affecting the property pursuant to an agreement between parties to the cause held entitled to be considered as bona fide purchasers as regards the lien of a judgment subsequently obtained after the order of dismissal was set aside.

3. JUDGMENTS—*jurisdiction to vacate order of dismissal at subsequent term.* Court did not have jurisdiction at subsequent term of court to set aside and vacate an order dismissing the cause where only one of numerous defendants appeared by attorney, and the only notice of motion to set aside was that served upon the attorney representing only one of the defendants.

4. EVIDENCE—*judicial notice of changes wrought during war.* As respects laches wherein attorney showed that delay was due to his military service in France, the court takes judicial notice of the changes wrought in the year 1917.

5. SEQUESTRATION—*attorney serving in military forces not guilty of laches.* Attorney for parties undertaking to have real estate sequestered for payment of judgment was not guilty of laches in not pressing the case where delay was caused by his entry into military service in France.

6. EXECUTIONS—*levy abandoned by failure to advance fees.* Where judgment creditor failed to advance fees to advertise and

sell property, and bailiff returned execution, no part satisfied, levy of execution was abandoned.

7. Notice and record of title—*vendee presumed without notice of subsequent conveyances and judgments.* All persons dealing with property after date of record of deed by one who had been party to a suit which was dismissed are presumed to be free from charge of notice concerning any subsequent conveyances or judgments against the original grantor through the setting aside of the order of dismissal.

8. Judgments—*lien of judgment on land conveyed prior to rendition.* Where party to action after its dismissal conveyed land and subsequently the order of dismissal was set aside and vacated and a judgment entered against the grantor, such judgment was not a lien on the land.

9. Sequestration—*persons interested in property entitled to intervene.* In suit to have real estate sequestered for payment of judgment against a grantor, persons who had bought the property and had paid a valuable consideration for it were entitled to intervene.

10. Equity—*intervention discretionary with court.* Intervention is a matter within the sound discretion of the court.

11. Judgments—*entry of order nunc pro tunc.* Court held without authority to redocket a case which had been dismissed and enter an order *nunc pro tunc* as of a prior date.

12. Appeal and error—*jurisdiction to enter order nunc pro tunc.* Court had no authority to entertain motion to redocket case and enter an order *nunc pro tunc* as of a prior date where the motion and proposed decree were not made and presented until after appeal bond had been filed and approved, at which time the court had lost jurisdiction.

Appeal by plaintiff from the Superior Court of Cook county; the Hon. Oscar Hebel, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1924. Affirmed. Opinion filed October 28, 1925. Rehearing denied November 10, 1925.

Frank N. Reed, for appellant; Robert L. Floyd, of counsel.

Charles L. Bartlett, George Gillette and Robert Humphrey, for appellees.

Mr. Justice Taylor delivered the opinion of the court.

One Frank Kerting, on November 4, 1916, filed a bill of complaint in the superior court undertaking thereby to have certain real estate sequestered for the payment of a judgment which he had obtained against one Mary F. Flood. Upon a trial before the chancellor, a decree was entered dismissing the bill for want of equity. This appeal is therefrom.

Nearly all of the evidence is documentary, so that there is little, if any, controversy as to the facts.

Mary F. Flood, on and prior to April 8, 1912, was the owner of a certain lot 70, the real estate in question subject to two trust deeds to Edward N. Weart. On April 8, 1912, by warranty deed, Mary F. Flood, together with Andrew J. Flood, her husband, conveyed the property to their son, Emmett M. Flood. That deed was recorded on April 10, 1912. By warranty deed dated February 10, 1916, recorded March 2, 1916, Emmett M. Flood conveyed the property to Russell G. Flood, his brother. Later, on June 27, 1916, Frank Kerting (the original complainant herein) recovered a judgment for the sum of $578.87, in the municipal court against Henry R. Planz, Mary F. Flood and Henry A. Planz.

On June 28, 1916, an execution was issued; and on January 17, 1917, it was returned reciting a levy on the interest of Mary F. Flood in the property; and on July 6, 1916, a certificate of the levy was filed in the office of the recorder of deeds. It also recited that the necessary fees for advertising the property not having been advanced, the execution was on January 17, 1917, returned, no part satisfied, and that it was served on Mary F. Flood on July 13, 1916.

On July 8, 1916, another execution was issued and on October 6, 1916, returned, defendants not found and no part satisfied.

The bill of complaint herein was filed on October 4, 1916. Russell G. Flood was served with summons on October 5, 1916, and Emmett M. Flood, on January 25, 1917. No service was had on Mary F. Flood.

On February 9, 1917, an order of default for want of an answer was entered against Emmett M. Flood, and it was ordered that the bill of complaint "be and is hereby taken *pro confesso* by and against the said defendant for want of an answer."

On April 4, 1917, a summons was issued against Mary F. Flood, impleaded with Emmett M. Flood and Russell G. Flood. It was returned on May 7, 1917, "not found."

On May 29, 1918, Mrs. Sedan Smith and Augusta Rattray suggested the death, on February 25, 1917, of Frank Kerting, and, as the only surviving heirs, and as no administrator had been appointed, petitioned the court that they be substituted as complainants.

On the same day, Russell Flood suggested the death of Mary F. Flood, a defendant, and as no administrator had been appointed, and as she left as her only heirs at law Andrew J. Flood, Alice Power and Mary Green, her daughters, Thomas A. Flood, Emmett M. Flood and Russell G. Flood, her sons, and certain others named as husbands or wives of her daughters and sons, petitioned the court that they be substituted as defendants.

On the same day, May 29, 1918, "on motion of solicitor for defendants, and by agreement of parties," an order was entered making the substitutions asked for. The same order, also, dismissed the suit. The words on that subject are as follows: "By agreement of parties and motion of Mrs. Sedan Smith and Augusta Rattray, complainants, it is ordered that the cause be dismissed without costs."

On June 1, 1918 (recorded June 4, 1918), Russell G. Flood and Helen M. Flood, his wife, by warranty deed conveyed the property to John W. Burton. On June 25, 1918 (recorded June 27, 1918), John W. Burton, widower, by warranty deed, conveyed the property to Jeremiah Madigan and Della Madigan as joint tenants. On July 14, 1919 (recorded July 17, 1919),

Jeremiah and Della Madigan, by warranty deed, conveyed the property to Albert J. Potzel and Jessie Potzel (his wife) as joint tenants.

On July 14, 1919, nearly fourteen months after the order dismissing the suit, Frank N. Reed, as "attorney for complainant," and Callahan & Callahan, "atty. for Admr." served notice on M. W. Cagney by leaving a copy of the notice at the office of Cagney, that on July 15, 1919, they would ask that the order of May 28, 1918, dismissing the suit, be vacated and set aside, and that the executor be substituted as complainant.

A motion and affidavits in support thereof were filed on July 17, 1919. The chief matters set up in the affidavits were that Frank N. Reed, who filed the bill of complaint herein was in military service and left for France on December 24, 1917, and did not return to Chicago until May 22, 1919; that no service of notice was had upon him, and that he knew nothing of the order of May 29, 1918, until a few days before making his affidavit. In opposition to the motion asking that the order of May 29, 1918, be vacated, an affidavit was filed on July 17, 1919, by M. W. Cagney, solicitor of record for the defendants. In that affidavit he alleged that on or about May 15, 1918, in undertaking to bring the cause to an issue or have it adjusted, he went to the office of Frank N. Reed, and was there told that he was in Europe, and that no one had charge of his litigation; that then when he learned that Frank Kerting had died, he sought out the relatives of the deceased, Mrs. Sedan Smith, and Augusta Rattray, daughters of Kerting, deceased; that he got them to go into court and made a settlement; that the death of Frank Kerting was suggested upon the record and the suit dismissed by agreement of the parties, and Mrs. Sedan Smith and Augusta Rattray paid $25 each in settlement of the suit.

On July 17, 1919, the court entered an order, on motion of the administrator of the estate of the complainant, Frank Kerting, substituting Stanley S.

Schaeffer as complainant in the cause. An order was also then entered, "that the order herein, dated May 29, 1918, in so far as it substituted Mrs. Sedan Smith and Augusta Rattray, complainants, and dismissed this cause, be and the same is hereby vacated, set aside and held for naught," and that the cause be reinstated and redocketed, and that the defendants plead, answer or demur within thirty days. It was further ordered "that Mrs. Sedan Smith return to the defendants, or their solicitor, $50 paid her by them, in ten days from this date." On November 8, 1920, on motion of the solicitor for the complainant, the demurrer and the plea of the defendant, Russell G. Flood, were overruled, and the defendant ordered to answer within ten days.

On December 29, 1920, it was ordered that the bill be taken as confessed as to the defendant Russell G. Flood; and on December 29, a summons was issued against the defendants Andrew Flood, Alice Power, Joseph Power, Thomas A. Flood, Catherine Flood, Mary Green, George Green, Josephine Flood, Helen Flood, impleaded with Russell G. Flood, and Emmett M. Flood, to answer Stanley S. Schaeffer, administrator of the estate of Frank Kerting. That summons was returned served on Alice Power, Mary Green and Thomas A. Flood. On February 14, 1921, the three last-named defendants were defaulted, and an order entered that the bill of complaint be taken *pro confesso* against them for want of an answer.

On February 28, 1921, Albert J. Potzel and Jessie Potzel filed a petition asking leave to become parties defendant, and that they be allowed to answer the bill of complaint. On February 28, 1921, an order was entered granting them leave to become parties defendant and to answer the bill of complaint. On the same day, Albert J. Potzel and Jessie Potzel filed their answer in and by which they set forth various deeds and conveyances hereinbefore mentioned; that the said John W. Burton, Jeremiah Madigan and Della Madi-

gan, and themselves, the petitioners, each purchased said real estate and paid full value therefor, relying upon the records of Cook County, Illinois, without, any notice or knowledge, either actual or constructive, of the alleged claims of Frank Kerting or the complainant.

On March 5, 1921, exceptions to the answer of the Potzels were filed on behalf of the complainant. On July 10, 1923, the following order was entered: "This cause being this day called upon the general call, pursuant to the order heretofore entered on the 5th day of June, A. D. 1923, it is ordered that said cause be and is hereby stricken from the several dockets of this court." On December 22, 1923, an order was entered, on motion of the solicitor for the complainant, that the cause be "reinstated to be placed at issue within thirty days." On January 19, 1924, exceptions were filed on behalf of the complainant to the answer of the intervening defendants, Albert J. Potzel and Jessie Potzel.

On May 21, 1924, on motion of the solicitor for the complainant, the bill was dismissed as to Joseph Power, Catherine Flood, George Green, Josephine Flood and Helen Flood.

At the hearing before the chancellor, beginning May 21, 1924, in addition to the documentary evidence, there was introduced the testimony of Fred W. Story, Vincent M. Reed and Albert J. Potzel. Story testified —his testimony being admitted, but not against the Potzels, the intervenors—that at a hearing on a citation in the estate of Mary F. Flood, Emmett M. Flood stated that his mother deeded the property to him and that he paid her one dollar as the consideration; that up to that time she owned it; that he lived on the premises with his mother and father and paid them board; that at the hearing on the citation a Mrs. Green testified that Emmett M. Flood was under age at that time. Reed testified—his testimony being restricted as Story's was—that Mary F. Flood, when he visited

her in April or May, 1916, said: "This is for sale and it is my own property"; that, "The son made the statement that the property, as I remember it, he said, is in my name, after she had represented it right along, right in front of him as being her own property."

Potzel, one of the intervenors, testified that he and his wife bought the property in question from the Madigans and paid therefor, as a consideration, $6,800, which was made up of $3,200 in cash, and the balance in a mortgage. On cross-examination he testified that Madigan told him that he and his wife owned the property; that he employed the Chicago Title and Trust Company to look the matter up, and that company gave him a guaranty policy.

At the close of the hearing, on June 5, 1924, the chancellor entered a decree dismissing the bill for want of equity.

On October 15, 1924, a motion was made on behalf of the complainant that the court redocket the cause and enter a decree *nunc pro tunc* as of February 14, 1921, against Russell G., Emmett M. and Thomas A. Flood, and Alice Power and Mary Green. On October 21, 1924, that motion was denied. This appeal is from the above-mentioned decree of June 5, 1924.

The following matters are here considered: (1) the order of May 29, 1918; (2) laches; (3) the judgment, as a lien; (4) the right to intervene; and (5) the motion of October 15, 1924, to redocket and to enter an order *nunc pro tunc*.

(1) There is no doubt but that Kerting had the right, on October 4, 1916, under the law, to file his bill of complaint and undertake to sequester the property in question for the payment of the judgment which he had obtained on June 27, 1916, against Mary F. Flood. The record shows that after the bill of complaint was filed, and after the death of Kerting on February 25, 1917, the court by agreement of the parties, and upon representations made on behalf of

all the parties, complainants and defendants, entered an order,—owing to the death of Kerting and Mary F. Flood—substituting different parties as complainants, and adding and substituting different parties as defendants. And that the court then entered, on May 29, 1918, on motion of the new complainants, and "by agreement of the parties," an order "that the cause be dismissed without costs."

What then was the situation if it turned out that the substitutions for the original complainant were erroneous? It is claimed that it would show that the decree of May 29, 1918, was void. But the court having jurisdiction of the subject matter, and having jurisdiction over the parties before it, who, according to its judgment, were the proper parties, and having, pursuant to their agreement, dismissed the cause, that, under the law, constituted an adjudication and, so, became binding until set aside or vacated; it was not void. *Finlen v. Skelly*, 310 Ill. 170. "Where the jurisdiction of the court depends upon a fact which it is required to ascertain, its judgment determining that such fact does or does not exist is conclusive on the question of jurisdiction, until set aside or reversed by direct proceedings." 15 C. J. p. 852, sec. 173. From that, it follows that the Potzels were justified in relying upon the order of dismissal of May 29, 1918. Being presumed to have relied upon that order and purchased the property in question, and having paid therefor a valuable consideration, they are entitled to be considered as bona fide purchasers.

In *Claflin v. Dunne*, 129 Ill. 241, it was held that even where jurisdiction was obtained over the defendant in his lifetime, a judgment rendered against him, even subsequent to his death, was not void, and that although a court ought to refrain from exercising jurisdiction over a party after his death, "its failure to do so is an error to be corrected upon appeal, if the fact of the death appears upon the record, or by

writ of error *coram nobis,* if the fact must be shown *aliunde.*"

It is urged that the order of May 29, 1918, dismissing the suit was void, on the ground that no notice had been served on the administrator of the estate of Kerting, deceased, of the motion to dismiss. But the record shows that Schaeffer, the administrator, was not a party to the suit, and there was nothing in the records of the case showing that any letters of administration had ever been issued in the estate of Kerting, deceased. And, further, the only record before the court showed that no administration had ever been issued on that estate. As a matter of fact, all the parties to the suit were before the court and requested and agreed that the order of dismissal be entered.

Did the court have jurisdiction at a subsequent term of the court to set aside and vacate the order dismissing the cause? In other words, did the court have authority on July 17, 1919, to set aside and vacate the order of May 29, 1918? The record shows that no notice of the motion made on July 17, 1919, to set aside the order of dismissal of May 29, 1918, was legally served on any of the defendants, and that the notice of the motion to set aside and vacate the dismissal order was served on N. W. Cagney, and on no one else, whereas, Russell G. Flood and Emmett M. Flood had been served with summons; and that all the other heirs of the deceased defendant, Mary F. Flood, had voluntarily appeared in the cause and been substituted, and not one of the defendants, except Russell G. Flood, had ever appeared by an attorney. Obviously, the notice to Cagney, after the dismissal of the case, was insufficient.

(2) It is argued for the petitioners, the Potzels, that laches is a bar to the complainant's claims. The suit was dismissed on May 29, 1918. Russell G. Flood deeded the property to Burton on June 4, 1918. Burton deeded it to the Madigans on June 25, 1918. The

latter deeded it to the Potzels on July 14, 1919, and they gave a valuable consideration for it. The order vacating the order of dismissal was entered on July 17, 1919, more than a year after the date of the order of dismissal. In the affidavit of Frank N. Reed, in support of the motion of July 17, 1919, to vacate the order of dismissal, it is stated that he was the solicitor for the complainant and was in the military service and left for France on December 24, 1917, and did not return to Chicago until May 22, 1919; that no service of notice was had upon him, and that he knew nothing of the order of May 29, 1918, until just before the date of his affidavit. It will be seen that the suit was dismissed about five months after the solicitor, in military service, went to France. It is true that the original complainant, Kerting, died on February 25, 1917, and a substitution might have been made between that date and December 24, 1917, but we are mindful of and take judicial notice of the changes wrought in the year 1917, and certainly cannot justifiably charge Reed, the solicitor of Kerting, with laches in not pressing the case; doing the greater condones the less. It may well be that if Reed had not been in the military service in 1917, and in France from December, 1917, to nearly June, 1919, that the seemingly erroneous substitution and the agreement to dismiss and the dismissal itself would not have taken place on May 29, 1918. We do not, therefore, consider laches as a bar.

(3) It is urged for the complainant that the judgment was, and remained, a lien on the property in question. But the evidence shows that by reason of the failure of the judgment creditor to advance the fees to advertise and sell the property, the bailiff returned the execution, no part satisfied; and, also, the evidence shows that an *alias* execution was issued on July 8, 1916, all of which proves that the levy was abandoned. In Freeman on Executions, sec. 271 (3rd Ed.), the law is stated as follows:

"The only proper object of a levy is to compel sat-

isfaction of the writ out of the property seized, and if the plaintiff, by his long delay in following his levy by a sale, or by directions to return the writ unsatisfied, or by any other course of action, indicates that his employment of the writ is not to coerce the prompt payment of his debt, then the levy is abandoned.''

All persons dealing with the property after the date of the record of the deed by Mary F. Flood to Emmett M. Flood are presumed to be free from the charge of notice concerning any subsequent conveyances or judgments against Mary F. Flood. Chapter 30, ¶ 31, Cahill's St. 1923. *Milmine v. Burnham,* 76 Ill. 362; 23 R. C. L. 210. Our decision is that the mesne conveyances, made after May 29, 1918, when the suit was dismissed, that is by Russell G. Flood to Burton on June 4, 1918, by Burton to the Madigans on June 25, 1918, and by the Madigans to the Potzels on July 14, 1919, all after the order of dismissal and before the order of reinstatement on July 17, 1919, resulted in title to the property, subject to the trust deeds, vesting in the Potzels free and clear of any lien of the judgment in question. The judgment was not rendered against Mary F. Flood until June 27, 1916, whereas she conveyed the property to Emmett M. Flood on April 8, 1912, and the latter conveyed it to Russell G. Flood on February 10, 1916; and so the judgment was not a lien on the property. In *Davidson v. Burke,* 143 Ill. 139, the court said:

''And in *Rappleye v. International Bank,* 93 Ill. 396, it was also held by this court that a judgment is no lien on lands fraudulently conveyed by the debtor before the judgment was recovered, and that the debtor in such case has no equitable or legal title upon which a lien can attach.''

(4) It is claimed that the Potzels had no right to intervene. But the evidence shows that they had bought the property in question and had paid a valuable consideration for it, and so were particularly interested in maintaining their title free from any proceedings under the judgment. When, therefore, they

petitioned to be made parties they had substantial rights which it was equitable for the court, in that suit, to entertain and consider. Intervention is a matter within the sound discretion of the court. Here the question involved was the ownership of a specific res; each made claims in conflict with each other concerning the same property. Their relations were much the same as the defendants to a bill of interpleader. 21 C. J., sec. 338. As quoted in *Gunderson v. Illinois Trust & Savings Bank,* 100 Ill. App. 461, from *Foster v. Mansfield, C. & L. M. R. Co.,* 146 U. S. 88: "The application of the petitioner is addressed to the sound discretion of the court." Inasmuch as the cause was still pending and no final decree had yet been entered, and the Potzels alleged they had valuable rights which would be involved and endangered if they were not allowed to take part in the litigation, we are of the opinion that the chancellor did not err in allowing them to intervene.

(5) As to the motion of October 15, 1924, to redocket the case and enter an order *nunc pro tunc* as of February 14, 1921, the court had no authority at that time to grant such a motion. *People v. Rosenwald,* 266 Ill. 548. Further, the motion and the proposed decree were not made or presented to the chancellor until after the appeal bond had been filed and approved, and at that time the court had lost jurisdiction.

Certain contentions are made concerning the ruling of the trial judge on matters of evidence, but upon examining them, we find that they are untenable.

After carefully examining the record and considering all the matters involved, we are of the opinion that the chancellor was right in dismissing the bill for want of equity.

The decree, therefore, will be affirmed.

*Affirmed.*

THOMSON, P. J., and O'CONNOR, J., concur.