## JANE HALLORN *et al.*

### v.

### AUGUST TRUM.

*Filed at Mt. Vernon June 16, 1888.*

1. LIENS—*judgment and execution liens—in what order and when they attach.* Judgments become liens on the real estate of the debtor in the order in which they are rendered, and executions become liens on personal property from the date of their delivery to the proper officer.

2. SAME—*judgment lien—after land has been fraudulently conveyed.* Where a debtor makes a conveyance of his land to defraud creditors, judgments recovered against him will not become liens on the same, for the reason that he will have no estate upon which the liens can attach.

3. SAME—*lien under creditor's bill—from what time.* A creditor's bill, with proper and distinct averments as to the property attempted to be reached, will become a lien on that property from the time of filing the bill and service of process upon those who are proper parties to the bill; but the filing of the bill and the service must concur before the lien will attach.

4. SAME—*priority of right under judgments and decrees in the State and Federal courts.* After a debtor had made a fraudulent conveyance of his land to a non-resident of the State, A recovered a judgment against him in the United States Circuit Court, and on execution being returned no property found, A filed his bill in the United States court to set aside the conveyance, making the grantor and grantee parties. Service was had upon the grantor only, and the cause was continued, and *alias* summons

issued for the grantee, without service until August 20, 1872, when notice was given him by publication; and on March 3, 1873, a decree was entered setting aside the conveyance and authorizing a sale of the land, which was made by the master on September 4, 1873, and deed made February 24, 1875. Long after the commencement of this suit, B recovered a judgment against the same grantee in the State court, and who, on September 8, 1871, filed his bill in the State court to subject the land to his judgment, and, on service and publication of notice, obtained a decree on April 5, 1872, under which he sold the land July 25, 1872, and obtained his deed November 15, 1872: *Held,* that the title to the land passed under the last named decree, and took precedence of the sale in the first named proceeding, notwithstanding there was no act of Congress for notice by publication when the first bill was filed.

5. LIS PENDENS—*what constitutes.* The commencement of a suit in equity, by filing a bill, does not constitute *lis pendens* until summons has been served upon the party in interest.

6. PARTIES—*decree as to one not a party.* After a party had conveyed his interest in land to another, who went into possession, a proceeding was instituted in the United States Circuit Court against the first party named, but not against the grantee, though he was in possession, in which the title the grantor had before his conveyance was set aside: *Held,* that the grantee not being a party to the suit, the decree did not bind him or affect his interest in the land.

APPEAL from the Circuit Court of Effingham county; the Hon. WILLIAM C. JONES, Judge, presiding.

Messrs. WOOD BROS., for the appellants:

The suit of *Washburn* v. *Slevin & Co.* Trum and Bruggeman commenced March 8, 1881, and all decrees and proceedings thereunder, extraordinary as they seem to be, can not affect appellants' title. At the time that suit was begun, and all the time during its progress, Bruggeman had no interest in the land in controversy. Since January 21, 1875, John F. Waschefort, the immediate grantor of appellant Hallorn, had been in possession, under warranty deed from Bruggeman, and he was not a party to the suit. The setting aside of Bruggeman's decree could have no greater effect than its reversal, and that would not have divested Waschefort's title. *Guiteau* v. *Wisely,* 47 Ill. 436.

We can not presume that one who does not appear to have been a party, had his day in court. Freeman on Judgments, secs. 141, 484.

The judgments of Slevin & Co. and Bruggeman, against Anthony Veneman, were not liens on the land, it having been fraudulently conveyed by Anthony to Joseph Veneman before their recovery. *Lyon* v. *Robbins,* 46 Ill. 279; *Rappelye* v. *International Bank,* 93 id. 400.

It is by the filing of a creditor's bill, and the service of process upon the party holding the fee, that a lien is obtained on land which the judgment debtor has fraudulently conveyed before the recovery of the judgment. 2 Barb. Ch. Pr. 157; *Ballentine* v. *Beall,* 3 Scam. 206; *Chase* v. *Searles,* 45 N. H. 515; *Boynton* v. *Rawson,* 1 Clarke, (N. Y.) 584; Bump on Fraud. Con. 534; *Miller* v. *Sherry,* 2 Wall. 249.

The filing of a creditor's bill, without service of process, does not create a lien. 2 Barb. Ch. Pr. 158; *Edmeston* v. *Lyde,* 1 Paige, 639.

Slevin & Co.'s creditor's bill was not *lis pendens* until service of process had been had upon Joseph Veneman, the holder of the legal title. *Anonymous,* 1 Vern. 286; *Preston* v. *Tubbin,* id. 318; *Miller* v. *Sherry,* 2 Wall. 250.

There is no *lis pendens* until order of publication is fully executed. Freeman on Judgments, sec. 195.

The filing of a creditor's bill in one court does not give that court exclusive jurisdiction. Several creditors' bills may be filed in the same court, and upon judgment recovered in different courts. 2 Barb. Ch. Pr. 159; *Boynton* v. *Rawson,* 1 Clarke, (N. Y.) 584.

Mr. S. F. GILMORE, for the appellee:

The most vigilant creditor should have the priority of lien. Before Bruggeman obtained his judgment, Slevin & Co. had filed their bill and issued summons on the same day, and obtained service on one of the defendants. The filing of this bill

constitutes such *lis pendens* as rendered it impossible for any *bona fide* transfer of the title.

The principle that the purchaser of the subject matter of a suit *pendente lite*, acquires no interest as against the plaintiff's title, whether legal or equitable, is too well established to be now questioned. Such sale, as against the plaintiff, is considered a nullity, and he is not bound to take notice of it. The decree of the court binds the property in the hands of such purchaser, although he is no party to the suit, and paid a full price for it, and had in fact no notice of the pendency of the suit or the claim of the plaintiff. He is chargeable with constructive notice of the pendency of such suit, so as to render his interest in the subject of it liable to the event. *Ludlow* v. *Kidd's Exr.* 3 Ohio, 542.

The decrees of the United States court, "extraordinary" as they may seem to appellants, and even if they were erroneous, are valid until reversed, or in some way annulled, and can not be attacked collaterally; and this court is not empowered to review them. *Ritchey* v. *Pease*, 114 Ill. 353; Bennett on Lis Pendens, 174.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

This was an action of ejectment, brought by appellee, against the appellants, to recover a certain tract of land in Effingham county. Both parties claim under Anthony Veneman, as a common source of title.

It appears from the evidence, that Anthony Veneman, on the 9th day of February, 1867, conveyed the land, by deed, to Joseph Veneman, which was recorded on the 16th day of the same month. On the 24th day of July, 1867, Joseph executed a power of attorney to Anthony to sell the land. Both parties claim that the conveyance from Anthony to Joseph Veneman was fraudulent and void as against creditors, and each party claims title to the land under proceedings instituted in court to

set aside the fraudulent conveyance, and subject the property to the payment of judgments recovered against the grantor, Anthony Veneman, and the real controversy between the parties is as to the priority of the respective titles.

Slevin & Co., under whom appellee claims, obtained a judgment in the Circuit Court of the United States for the Southern District of Illinois, against Anthony Veneman, for $1711.12, on the 22d day of June, 1867. On the 24th day of July following, they filed, in the same court, a creditor's bill against Anthony and Joseph Veneman, in which they alleged that the conveyance was fraudulent and void, and asked that they be enjoined from selling the premises, and that the deed be set aside. Process was issued against both defendants, and served on Anthony Veneman, August 2, 1867, and a decree *pro confesso* was entered against him January 6, 1870. No service, however, was had on Joseph Veneman. *Alias* summons issued against him October 30, 1867, which, with five others subsequently issued, were returned without service, for the reason that the defendant was a resident of Indiana. No publication was made until August 20, 1872, when due publication of notice, as required by the act of Congress, was made, and a final decree was rendered in the United States court March 3, 1873, setting aside the deed of Anthony to Joseph Veneman, as fraudulent against Slevin & Co., and authorizing the master to sell the lands embraced therein, which the master did, September 4, 1873, to John Slevin, one of the plaintiffs, for $2172.19. The master's deed to John Slevin, under said decree, to the land in controversy, and other land, February 24, 1875, was duly recorded. The title thus acquired became vested in appellee before the commencement of this suit.

The appellants relied upon title derived as follows: October 8, 1867, John B. Bruggeman recovered judgment in the circuit court of Effingham county, against Anthony Veneman, for $722.18, upon which execution was issued, and returned no property found. September 8, 1871, Bruggeman filed a cred-

itor's bill against Anthony Veneman and Joseph Veneman, to set aside the deed of February 9, 1867; personal service on Anthony; affidavit of non-residence of the other defendant filed, and first publication of notice made the same day; decree rendered April 5, 1872, that the deed was fraudulent and void, and the land embraced therein, including the land in controversy, subject to Bruggeman's judgment; *alias* execution issued on Bruggeman's judgment June 27, 1872, and levied on the land in controversy and other lands in said deed (excepting the south-east quarter of the north-east quarter of section 4, town 7, range 6,) as the property of Anthony Veneman,—all sold to John B. Bruggeman at sheriff's sale July 25, 1872; certificate filed and recorded; sheriff's deed to John B. Bruggeman November 15, 1873, and filed for record March 12, 1875. On the 21st of January, 1875, Bruggeman conveyed to John F. Waschefort, and deed recorded on the 23d of the same month. On April 3, 1884, the heirs of Waschefort conveyed to appellant Jane Hallorn.

No importance is to be attached to the fact that the judgment under which appellee claimed title, was rendered prior to the rendition of the judgment under which appellant claimed title. The legal title having passed from the judgment debtor before the rendition of either judgment, by a valid deed as between him and his grantee, the judgments did not become liens on the lands conveyed, in the order of their rendition. *Lyon* v. *Robbins*, 46 Ill. 277, is conclusive upon this question. The same rule, however, is laid down in *Miller* v. *Sherry*, 2 Wall. 248.

Before the judgments were rendered, the judgment debtor, Anthony Veneman, had conveyed his lands. There was therefore no estate upon which the lien of a judgment could attach. In order, therefore, to determine the priority of lien between the two contesting creditors, we must look to the proceedings in equity instituted by them to remove the fraudulent conveyance, and subject the lands to the satisfaction of their judgments.

It will be observed that Slevin & Co., from whom appellee derived title, filed their bill to set aside the fraudulent conveyance, on July 24, 1867, while Bruggeman, under whom appellants claim, did not file his bill until September 8, 1871. The latter, however, obtained the first service on Joseph Veneman, and also obtained the first decree setting aside the fraudulent deed. But it is insisted that Slevin & Co. were the most vigilant; that the filing of their bill, service on Anthony Veneman, one of the defendants, on August 2, 1867, issuing *alias* summons for Joseph Veneman, constituted *lis pendens;* that these acts gave them a prior equitable lien, and that the decree obtained by Bruggeman was subject to their prior lien on the premises. There is no difficulty in laying down a general rule in regard to the lien of judgments, executions or creditors' bills. The rule is a familiar one, that judgments become liens in the order in which they are rendered. Executions become liens on personal property from the date of their delivery to the sheriff, while a creditor's bill, with proper and distinct averments as to the property attempted to be reached, will become a lien upon the filing of the bill, and service of subpœna upon those who are proper parties defendant. A junior judgment creditor may obtain a prior lien by exhausting his remedy at law, and first invoking the aid of a court of equity, by filing his bill, and service of process. The trouble, here, is not in determining the general rules of law applicable to ordinary cases where a creditor's bill has been filed, for the general rules are well established and readily comprehended; but the only trouble we find is in adapting the well settled rules of law to the particular facts established by the record before us. The commencement of a suit by filing a bill does not constitute *lis pendens* until summons or subpœna has been served.

*Grant* v. *Bennett*, 96 Ill. 513, is an authority on this question, well sustained by the adjudications of other courts. In addition to the authorities cited in the *Grant case*, we refer to *Boynton* v. *Rawson*, Clarke's Ch. Rep. (3d ed.) 585, and the

cases therein cited. It is there said: "Upon filing a creditor's bill, it is usual to take out both an injunction and subpœna,— an injunction to restrain the defendant from disposing of his property, a subpœna to compel him to answer the charge, and discover his concealed property. By the service of process, the defendant is notified, in an emphatic manner, of the commencement of the suit. He is able to give notice of it to others. It would be the means of great wrong and injustice, if a party could, by merely placing a bill among the mass of papers in the clerk's office, acquire a lien in this secret way to defeat subsequent *bona fide* purchasers, * * * or even subsequent creditors litigating in good faith. The filing of the bill should be followed up by service of process to acquire a lien, and its prosecution should be pursued with reasonable diligence to retain it."

Here, Slevin & Co. obtained service of process on Anthony Veneman before Bruggeman filed his bill. But Anthony had no interest whatever in the property he had conveyed to Joseph Veneman, and Joseph, the real party in interest, so far as the title to the land was concerned, was not brought into court until long after Bruggeman had filed his bill and obtained service upon both Anthony and Joseph Veneman. No decree could be rendered setting aside the sale until Joseph Veneman was brought into court. He held in his name the title to the land, and we do not think the cause of Slevin & Co. could be regarded as *lis pendens* until service was had upon him.

*Miller* v. *Sherry*, 2 Wall. 248, is a case in point. There, as here, in the bill first filed, the party to whom the lands had been fraudulently conveyed was not brought into court, and it was held that the cause was not *lis pendens*, and the decree rendered on the second bill filed, where the person to whom the land had been conveyed was brought into court, was sustained. It is there said: "There is another reason why the bill could not operate as constructive notice. Williams, who held the legal title, was not a party. We apprehend that to

affect a party as a purchaser *pendente lite*, it is necessary to show that the holder of the legal title was impleaded before the purchase which is to be set aside.   *   *   * The amended bill was undoubtedly sufficient, and it made Williams a party. But he was not served with process, and if he had been, this bill could have operated only from the time of service."

Where the question of *lis pendens* arises upon an amended bill, it is regarded as an original bill for that purpose.   The fact that no act of Congress provided for service by publication at the time the bill was filed, is of no importance.   This fact was known to Slevin & Co. when they brought the bill in the Federal court, and if they desired to obtain service and a decree in apt time, they should have brought their bill in the State court, where the law did authorize service by publication of notice.

One other question remains to be considered.   On the 24th day of March, 1884, a decree was rendered in the Circuit Court of the United States for the Southern District of Illinois, in which the proceedings in the Effingham circuit court on Bruggeman's creditor's bill and his deed were vacated and set aside. Bruggeman was a party to this proceeding, but long before the suit was instituted resulting in the decree, he had sold and conveyed the land, and his grantee was never made a party, although in possession of the land under proper deed of conveyance when the proceedings were instituted.   Waschefort, the grantor of appellant, who purchased in 1875 of Bruggeman, was not a party to the proceeding, and not being a party, the decree could not bind him, or affect his interest in the land or the title of his grantee.

The judgment will be reversed, and the cause remanded.

*Judgment reversed.*