THE UNION NATIONAL BANK *v.* P. A. LANE,

and

EDWARD BROWNE *et al. v.* THE UNION NATIONAL BANK.

*Opinion filed December 21, 1898.*

1. LEVY—*lien acquired by levy on real estate is constructive.* The levy of an execution on real estate, not being a manual seizure of the property, creates a lien which is merely constructive, and which can arise only by a compliance with the terms of the statute.

2. SAME—*record of levy on land lying in county of judgment has no additional force.* The recording of the sheriff's certificate of levy on lands lying in the same county where judgment was recovered gives no additional force or efficacy to the levy as a lien or to the certificate as notice to parties. (*McClure* v. *Engelhardt*, 17 Ill. 47, and *McKinney* v. *Farmers' Nat. Bank*, 104 id. 180, distinguished.)

3. JUDGMENTS AND DECREES—*judgment is not a lien on lands previously fraudulently conveyed.* A judgment is not a lien on real estate which the judgment debtor has previously conveyed to defraud creditors, for the reason that, as between the parties to the con-

veyance, it is binding until set aside, and no interest, legal or equitable, remains in the grantor upon which a lien can rest.

4. SAME—*effect of levy on real estate fraudulently conveyed before judgment.* The levy of an execution on real estate situated in the county of the judgment but conveyed by the debtor to defraud creditors before the judgment was rendered, the recording of the certificate of levy and the return of the execution *nulla bona,* create no lien upon the property.

5. PRIORITY—*filing bill to set aside fraudulent conveyance creates an equitable lien.* As between creditors who obtain judgments after the debtor has fraudulently conveyed his real estate situated in the county where the judgments were obtained, the filing of bills to set aside the conveyance and the obtaining of service thereon constitute *lis pendens,* and create equitable liens upon the land in the respective order of such filing and service.

*Lane* v. *Union Nat. Bank,* 75 Ill. App. 299, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

On May 31, 1893, the Union National Bank of Chicago recovered a judgment against Samuel B. Barker in the circuit court of Cook county. An execution was issued on the judgment, and on June 3, 1893, the sheriff levied on certain real estate which Barker, two days before the entry of the judgment, had conveyed to his wife, with the intent to hinder, delay and defraud his creditors. The sheriff endorsed the levy on the execution, and a certificate of such levy was filed for record in the recorder's office. Nothing further was done under this execution except to return it unsatisfied. Afterward, P. A. Lane recovered two judgments against Barker in the superior court of Cook county,—one on June 28, 1893, and the other on July 6, 1893,—on both of which executions were issued but were not levied. Edward Browne and others also obtained judgments against Barker, on which executions were issued and returned unsatisfied, but they took no further steps in the matter. On July 1 and July 11, 1893, respectively, Lane filed bills in equity against Barker and

his wife and the bank, to set aside the deed to Barker's wife and subject the land to the payment of his judgments, and service was had on the defendants in the two bills, respectively, on July 7 and 18, 1893, and the suits were afterwards consolidated. On December 13, 1893, the bank filed its creditor's bill against the Barkers, Lane, Browne and others. Cross-bills were filed by Lane and by Browne and others to the bill filed by the bank, setting up the facts and their respective claims. Issues were made, and a decree was entered finding that the deed was made in fraud of the rights of the creditors, and that the Union National Bank was entitled to priority in payment, then Lane, and last Browne *et al.* The appeals of Lane and of Browne *et al.* to the Appellate Court were consolidated and heard together, and the Appellate Court affirmed the decree in all respects, except that it was there determined that Lane was entitled to priority, in payment of his two judgments, over the bank and the other creditors. From that judgment the bank and Browne *et al.* have appealed to this court.

TENNEY, McCONNELL, COFFEEN & HARDING, for the Union National Bank, appellant and appellee.

CUSTER, GODDARD & GRIFFIN, for appellants Edward Browne *et al.*

JOHNSON & MORRILL, for appellee P. A. Lane.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

The only question of sufficient importance to be discussed here is, which of the two judgment creditors, the Union National Bank or P. A. Lane, is entitled to priority in payment out of the proceeds of the lands of Barker which had, prior to their judgments, been fraudulently conveyed to hinder and delay his (Barker's) creditors. The circuit court adjudged that the bank was entitled to

priority, but this finding was reversed by the Appellate Court and Lane was adjudged entitled to have his judgments first paid, it being conceded that Browne and the other creditors came third in the race. True, Browne *et al.* have attacked the judgment of the bank as collusive, and have insisted that it was without consideration and should be set aside; but after a careful consideration of the evidence we have reached the same conclusion arrived at in the courts below, and have found no sufficient evidence to sustain this contention. But, as before said, the question is, should the judgment of the bank be first paid, or the judgments of Lane? The judgment of the bank was obtained first, followed by the judgments of Lane, and if these judgments became liens on the land in the order of their rendition, the bank obtained, of course, the prior lien; or if the bank obtained a lien, by the levy of its execution on the land, which it is entitled to enforce in this proceeding, its judgment should be first paid, for the levy was made before Lane's judgments were recovered. But the contention of Lane is, that as the land had been previously conveyed to defraud creditors, none of the judgments became a lien on the land, and that no lien was obtained by the bank by the levy of its execution, and that the only liens obtained were the equitable liens of the complainants by filing their respective bills, and that such liens were established in the order in which the bills were filed. If this view be correct, Lane obtained the first lien, because his bills were filed before those of the bank.

It is the settled law of this State that a judgment is not a lien on real estate which the judgment debtor, before the rendition of the judgment, had conveyed away to defraud his creditors, the doctrine being, that as between the parties to it the conveyance is valid and binding, and no interest, legal or equitable, remains in the grantor upon which the lien can rest. (*Rappleye* v. *International Bank*, 93 Ill. 396; *Davidson* v. *Burke*, 143 id. 139;

*Hallorn* v. *Trum*, 125 id. 247; *Lyon* v. *Robbins*, 46 id. 276.) The bank contends, however, that as it levied its execution on the land as the property of the judgment debtor, and caused a certificate of such levy to be filed for record in the recorder's office before Lane had obtained his judgments or filed his bills, it thereby elected, and so gave public notice, to treat the fraudulent conveyance as void and the land as still the property of the judgment debtor, and that thereby it obtained the first lien. These several judgments were obtained in the same county in which the lands were situated, but after Barker had made his conveyance to his wife of the lands, and the issuing of the execution had no effect to create a lien where none was created by the judgment. Nor does the statute provide that the levy of the execution, or the recording of a certificate of such levy, shall give or create a lien. In the levy upon real estate there is no manual seizure or possession of the property, but the liens provided for by the statute are constructive, and arise only by a compliance with the statute. The statute has not provided that the recording of a levy in such case shall have any effect whatever. It has provided (sec. 34, chap. 77,) that when an execution is issued to another county and levied upon real estate, the officer making the levy shall make and file a certificate thereof in the recorder's office of his county, and that until the filing of such certificate the levy shall not take effect as against creditors and *bona fide* purchasers without notice. But this section has no application to this case. Conceding the superior diligence of the bank in obtaining its judgment and in levying upon the land in question situated in the same county, how can it be said that it thereby acquired the first lien, in the absence of any statute providing for a lien in such a case? True, it is also settled law that the judgment creditor may treat land fraudulently conveyed by his debtor as the property of his debtor, may levy upon it, have it sold and obtain a sheriff's deed therefor, and then bring

his bill to remove the fraudulent conveyance; (*Gould* v. *Steinburg*, 84 Ill. 170; *Phillips* v. *Kesterson*, 154 id. 572;) but it is not necessary to determine at what step of such proceedings, made effective by the sheriff's deed, the lien would attach, for the reason that the bank did not pursue this remedy, but, after making its levy and after Lane had filed his bills and obtained *lis pendens*, it also filed its bill. Had the bank sold under its levy, it would have been the duty of the sheriff, under section 17 of chapter 77, to file in the recorder's office a duplicate of his certificate of sale, which, as the statute declares, would have been evidence of the facts therein stated. But it is unnecessary to determine whether or not, as to other creditors like Lane, such a sale, and the recording of the certificate thereof, would have related back to the levy so as to cut off their intervening equities, for the reason, as before said, no such course was pursued. The statute makes no provision in such a case for the recording of a certificate of levy, but does provide for the recording of a certificate of sale.

We have been referred to *McClure* v. *Engelhardt*, 17 Ill. 47, and *Reichert* v. *McClure*, 23 id. 516; but in those cases the execution was issued to and levied upon lands in a foreign county, and they were controlled by different statutory provisions.

Our attention is also called to *McKinney* v. *Farmers' Nat. Bank*, 104 Ill. 180, and other cases holding that where lands fraudulently conveyed have been attached the attaching creditor acquires a lien, dependent upon the recovery of a judgment, which will not be disturbed by a decree in chancery setting aside the fraudulent conveyance, obtained by a subsequent judgment creditor. This lien, however, like judgment liens, is, of course, the creature of the statute. Section 9 of the Attachment act provides that where the writ is levied upon any real estate the officer shall file a certificate of such levy in the recorder's office, and that after such filing the levy shall take effect as to

creditors and *bona fide* purchasers without notice, and not before. There is no such provision relating to the levy of executions, except in foreign counties, as we have seen.

Counsel for the bank make the plausible contention that the provisions of the statute which we have mentioned do not create the lien, but relate only to the question of notice; that the levy creates the lien, and the recording of the certificate is by the statute made legal notice of such levy,—and they refer to *McClure* v. *Engelhardt, supra,* and *Reichert* v. *McClure, supra.* In those cases the execution was issued to and levied upon lands in a foreign county under provisions of the statute not applicable here. But if, by analogy, the reasoning be applicable to levies upon land in the same county where the judgment is rendered, the plaintiff should proceed to make his levy effective by advertisement and sale, in which case the question would arise, as before suggested, whether his recorded certificate of sale or his sheriff's deed would relate back to the levy so as to cut off the intervening rights of creditors with or without notice. The analogy fails, however, in a case where the prior execution creditor stops with his levy,—that is, stops with an act which is not of itself, by the statute, either expressly or impliedly made a lien,—and files his bill, which gives an equitable lien even where there is no judgment lien. Following to its legitimate conclusion this line of reasoning, the bank's proceedings under its execution had not ripened into a lien when they were abandoned and a lien secured by the filing of its bill. But we do not intend, by anything said *arguendo,* to express any opinion as to what would have been the effect upon the rights of the parties if the bank had proceeded to sell the property under its execution and to obtain a sheriff's deed therefor.

It is sufficient to say, in conclusion, that none of the parties obtained any lien upon the lands in controversy by any judgment, execution or levy. These were proper steps, some of them necessary to be taken, before the

bills could be filed, but the filing of the bills and obtaining of service constituted *lis pendens* and were equitable levies upon the land, and created equitable liens thereon in their proper order.  *Hallorn* v. *Trum, supra; Allison* v. *Drake,* 145 Ill. 500; *Davidson* v. *Burke, supra.*

The Appellate Court decided properly in holding that Lane, by his bills, obtained the first lien on the property, and its judgment will therefore be affirmed.

*Judgment affirmed.*