Fred G. Snow, Receiver of American Trust and Savings Bank of Kankakee, Appellee, and William H. Wheat, Successor Trustee of Anna M. Kerr and Robert Kerr Benefit Fund, Appellant, v. Dennis L. Hogan et al., Appellees.

Gen. No. 9,712.

Heard in this court at the October term, 1941. Opinion filed January 14, 1942.

GREEN & PALMER, of Urbana and Champaign, and EVA L. MINOR, of Kankakee, for appellant; EVA L. MINOR, of Kankakee, and HENRY I. GREEN, JOSEPH CORAZZA and JAMES H. WHEAT, all of Urbana and Champaign, of counsel.

DeSelm & Schneider and Samuel H. Shapiro, both of Kankakee, for appellees.

Mr. Justice Dove delivered the opinion of the court.

This is a creditors' suit in equity by Fred G. Snow, receiver of the American Trust and Savings Bank of Kankakee, Illinois, and by William H. Wheat, successor trustee of the Anna M. Kerr and Robert Kerr Benefit Trust Fund to set aside a deed from Dennis L. Hogan and his wife Ada B. Hogan, conveying property on which they resided, to their daughter Helen Neeson; a second deed of trust on the same property to secure a loan from Hogan's brother, Gregory Hogan; and a pledge by Hogan to James S. Neeson, his son-in-law, of certificate No. 4, of a one-ninth beneficial interest in the Kankakee Theatre Trust, a common law trust. The chancellor set aside the deed, found the issues for the defendants on the other two transactions, and gave priority to the judgments of the receiver over the judgment of the trustee. The trustee has appealed from all of the decree except that portion setting aside the deed. There is no cross-appeal.

As to the deed, Hogan's daughter claimed no interest in the property. The evidence shows Hogan had been seriously injured in an automobile accident and the deed was made with the purpose of enabling the daughter to use it in paying the two mortgages without administration or foreclosure in case he died. The court found there was no consideration for the deed, without holding it was fraudulent, and nobody questions that holding.

The claims of the plaintiffs were based on three judgments by confession in the circuit court, each entered on April 30, 1932. One of them is in favor of appellant against Dennis L. and Ada B. Hogan for $2,761.45 on a note for $2,500 dated March 30, 1927. The other two judgments are in favor of the receiver

of the bank. One of them is for $2,062.31 against Dennis L. Hogan on three notes of $600, $650 and $600 respectively, two of them dated October 18, 1929, the other dated November 13, 1929, all indorsed by Ada B. Hogan and due October 1, 1931. The other judgment is for $2,184.93 against Ada B. Hogan on two notes, one for $1,100, the other for $800, dated respectively September 18, 1929 and November 20, 1929, both indorsed by Dennis L. Hogan and due October 1, 1932. Each of the notes on which the receiver took judgment are payable to the American Trust & Savings Bank, in renewal of notes to the Legris Trust & Savings Bank, its predecessor. The American Trust & Savings Bank closed December 27, 1929.

A large part of the facts were developed by verified answers to written interrogatories. The facts disclosed by such answers and the oral testimony are as follows: Hogan owned the property deeded to his daughter, where he resided in the city of Kankakee, encumbered to a Building and Loan Association by a first mortgage upon which there was a balance unpaid of $1,301.50. On May 1, 1929, Hogan made a second deed of trust on the property to secure a loan of $3,600 from his brother. This first loan was made about 20 years previously, and was secured by successive mortgages on two other homes owned by Hogan, as they were acquired, and released as they were disposed of. It was finally secured on the premises last acquired by him, when purchased, subject to the mortgage of the Building and Loan Association, and the mortgage on the second home was at that time released. The interest was paid each year as it became due. The gross and net value of the home, in Hogan's statement to the Legris bank, shows he included both mortgages therein.

In addition to the home, Hogan owned a music business worth about $300 the certificate of beneficial interest above mentioned, and an incumbered Indiana farm

which he lost by foreclosure in 1931 or later. He at first said he thought the foreclosure was in 1928, but later corrected the date.

He borrowed from his son-in-law $3,000 on December 28, 1928; $2,000 on June 28, 1930; and $2,500 on June 1, 1931. These loans are evidenced by promissory notes. He paid interest on the first loan on December 28, 1929, and December 27, 1930. No other interest was paid. The first note bears at the bottom the words: "Certificate of stock in Kankakee Theatre Trust." The second note recites at the bottom: "This note is secured by Certificate of stock in KKK Theatre Trust." At the appropriate place on the certificate is an undated assignment thereof to Neeson in the usual form, signed by Hogan. There was introduced in evidence another assignment of the certificate to Neeson by Hogan, dated August 1, 1931, as collateral for the three notes, described therein. They testified the certificate was delivered without assignment to Neeson when the first loan was made; and that the assignment thereon was executed when the second loan was made. Appellant calls attention to the fact that the certificate is dated February 4, 1929, and he contends that therefore it could not have been delivered when the first loan was made. The Kankakee Theatre Trust was created on March 20, 1928. The secretary of the theatre trust testified that Hogan was the holder of a certificate for one-ninth interest at the time of its inception. There is no testimony as to when it was issued. Whether it was post dated or exchanged for a temporary interim certificate is not shown. Even if Hogan and Neeson were mistaken as to the date of the first delivery, their testimony that it was assigned on the back at the time the second note was made stands uncontroverted. Neeson had an income of $5,200 a year and there is no evidence which tends to discredit his and Hogan's testimony that the loans were in fact made at the times and in the amounts

above mentioned and that Neeson holds the certificate, not as owner, but solely as security for the loans.

There was introduced in evidence a statement on a printed form signed by Dennis L. Hogan taken from the files of the Legris bank, dated June 21, 1929, as to his financial condition, which showed as assets: cash on hand in bank, $1,300; good accounts of customers, $3,000; merchandise on hand, $200; residence, $10,000; Indiana land, $34,200; "Stock in Majestic Theatre Bldg. $12,000.00"; total, $60,700. Liabilities: notes payable to own banks, $2,100; other current debts, $1,000; debt secured by mortgage when due, $18,000. Net worth, home, $6000; reserves, W. W. Huchins, $2,500; a total of $29,600. The instrument contains the following: "Fill all blanks. Where no answer is given, 'No' or 'None' will be taken for your answer." On the back of the instrument under the heading: "Contingent Liability" appears the words: "Neither have any of our assets been pledged or assigned as collateral for any of our liability (except as follows)": The line following is blank, as is the line after the words. "Notes payable to others." We are not impressed with the claim of counsel for appellees that the phrase "Stock in Majestic Theatre Building $12,000.00" cannot be referred to the certificate of beneficial interest. However, the record is devoid of any testimony as to who wrote the answers to the questions in the printed form, or whether all the questions were read to or by Hogan, or as to whether he knew it contained the statement as to how the failure to fill a blank would be taken, or as to whether the sentences under "Contingent Liabilities" above quoted were called to his attention. Under such a state of the record no fraud in making the statement can be attributed to Hogan. Having been made on June 21, 1929, it does not prove fraud on October 18th and November 13th, when the renewal notes were made, and it is not even suggested that the American Trust & Savings Bank relied upon it.

The Kankakee Theatre Trust was created between the Kankakee Theatre Company, which had determined to wind up its affairs and dissolve the corporation, and five trustees, who held part of the certificates of beneficial interest. Among the trustees were Dennis L. Hogan and W. W. Huchins. The latter was also appellant's predecessor as trustee of the Kerr Benefit Fund. The trust agreement gave the trustees authority to convert the property into money and distribute the net proceeds among the certificate holders, with power to postpone or delay the conversation and distribution, not beyond the end of. 20 years after the death of the last surviving trustee, and with power to receive all rents and income from the property, distribute such portions at such times as they may in their discretion deem fit and proper; to use the funds on hand for the repair, improvement, protection or development of the property, or for the acquisition of any other property real or personal. It was not, therefore, merely a liquidating trust, as claimed by appellant. From the date this suit was started on May 4, 1932, to August 1938, Hogan received dividends at various times aggregating $2,750, in checks of $50 each, except a few checks of $100 each and one for $150. On the latter date payments to him were stopped at the request of the plaintiffs, since which time $1025 in dividends has been held by the trust. The decree required Neeson to credit all of these amounts on the amount of $11,296.80 due on his notes. This would leave a balance of $7,521.80 unpaid to Neeson. The decree makes no provision for crediting any payments received by Hogan before the suit was started, and there is no evidence of what amount, if any, he received, or that he received anything, during that time.

Appellant claims that the receipts by Hogan of dividends were not income, but were distributions of reserve. There is nothing in the record which even tends

to show the distributions were from the corpus of the trust. It is further claimed by appellant that there was an agreement between Neeson and Hogan at the time the certificate was pledged, that Hogan was to receive the dividends, and therefore retained a secret interest which made the transaction fraudulent *per se.* The pledge agreement expressly embraces all dividends and income. The testimony of both Neeson and Hogan shows that because the latter was in straightened circumstances, Neeson merely allowed him to collect the dividends because he was contributing to Hogan's support at the time and thought possibly Hogan could "get by" on them, and Neeson would have to support him if he did not have the dividends. There is no testimony that tends to show this was a consideration for the pledge or that it was to continue during Hogan's lifetime, or that it was anything but a purely permissive arrangement. Neeson testified he understood it was to continue through 1930 and 1931, because Hogan needed it and did not have property enough. The fact that they said there was an agreement does not change the character of the transaction into a retention of any interest by Hogan. Being voluntary and permissive it was revocable at any time. Both Neeson and Hogan disclosed the facts without reservation or equivocation. We are convinced, as the chancellor evidently was, of the truth and sincerity of their testimony that their transactions were a pledge in good faith, for value received, without any reservation of any secret interest in Hogan. The doctrine that the retention of a secret interest in the subject matter of a transfer is fraudulent *per se,* laid down in *Greenebaum v. Wheeler,* 90 Ill. 296, *Zwick v. Catavenis,* 331 Ill. 240, and other cases cited by appellant, has no application here.

We do not regard the fact that the pledge was not noted as a transfer on the records of the trust as invalidating the pledge, or as evidence of any fraud,

actual or constructive. The terms of the trust agreement that no "transfer" of any beneficial interest shall be effective or binding upon the trustees or affect them or the corpus of the trust unless and until the certificate be surrendered, the transfer thereof noted on their records, and a new certificate issued, manifestly does not apply to a mere pledge, which does not require the issue of a new certificate, either under the law or by custom. A notation on the records of the trust was not essential to the validity of the pledge. (*Harris v. Chicago Title & Trust Co.*, 338 Ill. 245, 267; *Allmon v. Salem Building & Loan Ass'n*, 275 Ill. 336, 341.

The relationship of the parties to an alleged fraudulent transaction is merely a circumstance that may excite suspicion, but will not, of itself, amount to proof of fraud. (*Third Nat. Bank of Mt. Vernon v. Norris*, 331 Ill. 230, 237; *Luthy & Co. v. Paradis*, 299 Ill. 380, 386.) In this case the evidence conclusively establishes the good faith of the parties and a valid consideration for each of the transactions questioned. Hogan still had his farm when he pledged the certificate to Neeson. He testified he was insolvent, but was in hopes that land prices would change and he could pay his creditors; and that if land prices had come back he could have done so. He paid interest on the farm mortgage, and made payments to his other creditors, in that hope, with the money received from Neeson. When he executed the collateral assignment he knew the farm was lost, but it is to be noticed he had used the money received from Neeson in paying on his debts, including that to the Legris bank. The evidence shows he was merely doing what countless others did under the wide spread and disastrous depression then at its height. He was trying to ride the storm, and like thousands of others, failed through no fault of his own. He thought he could pay out, and borrowed money from Neeson in an effort to do so. His creditors got the benefit of it. No fraud can be attributed to such a

course. A lack of good judgment in an honest transaction is not an element or a badge of fraud. There is an entire lack of any evidence to show that the mortgage, or the pledge of the certificate, was with any design of defeating the claims of his creditors. *Clark v. Harper,* 215 Ill. 24; *Beidler v. Crane,* 135 Ill. 92; *Bear v. Bear,* 145 Ill. 21, where that element was present, are not persuasive here. Appellees fully met the burden of disproving any implication of fraud as to pre-existing creditors. Cases of voluntary conveyances without consideration have no relation to the facts before us. A debtor has a right to prefer one creditor when he acts without fraud, even though he devotes all his property to the preferred creditor, leaving nothing to which his other creditors can resort. There must be evidence to show a fraudulent intent before a conveyance made upon a valuable consideration may be held fraudulent. (*Third Nat. Bank of Mt. Vernon v. Norris, supra; Nelson & Co. v. Leiter,* 190 Ill. 414.)

The chancellor correctly decreed that the dividends above mentioned be applied on the Neeson notes, and that upon payment of the balance of $7,521.80 due thereon by the complainants, or one of them, that Hogan's notes to Neeson be surrendered to Hogan, and that the certificate of beneficial interest be delivered to the clerk of the court, subject to levy and sale for the satisfaction of the judgments; and that the first and second mortgage debts, and Hogan's homestead in the residence property were superior to the rights of the complainants under their judgments.

The deed to Hogan's daughter was executed on February 27, 1932. The judgments were not obtained until April 30, 1932. The deed was not void, but was good as between the parties until it was set aside. The legal title having passed before the judgments were entered, they were not liens upon the property. Appellant's judgment was not revived before the decree. The fact that the receiver's judgments were revived prior to

that time did not make them liens, because the deed had not yet been set aside. When the creditors' bill, by all the complainants, was filed, the *lis pendens* was an equitable levy and created an equitable lien on the property. The liens were thus concurrent. The fact that the seven year statutory judgment lien had expired before the decree was entered is of no importance, because none of the judgments were statutory liens, and the rights of the complainants were all based on the lien created by the *lis pendens*. (*Davidson v. Burke,* 143 Ill. 139; *Union Nat. Bank v. Lane,* 177 Ill. 171.) It follows that the chancellor erred in giving priority to the judgments of the receiver.

The decree is affirmed in all respects except as to that portion which gives priority to the receiver's judgments. As to that part of the decree, it is reversed, and the cause is remanded with directions to modify the decree in that respect in accordance with the views herein stated.

*Reversed in part and remanded with directions.*