EASTERBROOK, Circuit Judge.
Real estate developer Lewis Leonard does not like fulfilling his obligations, and he goes to more trouble than most to avoid them. He broke a contract with Robert Barker and Theodore Lieblich, leading a jury to award them more than. $600,000 in damages. Before the jury could return its verdict, however, Leonard (who presumably knew what was coming) gave his son, Zach, the two vacant lots he owned adjoining his home in Oak Brook, Illinois. These parcels are worth approximately $300,000. About a week after Leonard informed Barker and Lieblich of his gift to Zach, they sued father and son to avoid the conveyance. They also recorded a lis pendens on the property in the appropriate office. Leonard then filed for relief under Chapter 7 of the Bankruptcy Code. After the Trustee removed the fraudulent-conveyance action to the bankruptcy court, Barker and Lieblich asked the bankruptcy judge to lift the automatic stay and order the Trustee to abandon the property (the fraudulent-conveyance suit is “property of the estate”). Barker and Lieblich argued that, because they initiated the suit to set aside the conveyance and filed a lis pendens, they had a security interest in the land. Because the property is worth less than their judgment, if Barker and Lieblich are indeed secured creditors, there is no' point in the Trustee’s pursuing the action, for there would be no net benefit to the other creditors. The judge refused the request, however, concluding that Barker and Lieblich do not have a security interest. Retrieving the land from Zach thus would produce assets to be distributed among all creditors. The district judge affirmed. We have jurisdiction under 28 U.S.C. § 158(d) even though the fraudulent-conveyance action remains on the court’s docket. See In re James Wilson Associates, 965 F.2d 160, 165-66 (7th Cir.1992); In re Official Committee of Unsecured Creditors of White Farm Equipment Co., 943 F.2d 752, 754-55 (7th Cir.1991).
Section 544(b) of the Bankruptcy Code of 1978 gives the Trustee the power to “avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by [an unsecured creditor]”. 11 U.S.C. § 544(b). In other words, if any unsecured creditor could reach an asset of the debtor outside bankruptcy, the Trustee can use § 544(b) to obtain that asset for the estate. As part of the estate, that asset is then divided among all the unsecured creditors, not just the creditor who could have reached the asset outside bankruptcy. Barker and Lieblich complain that the Trustee has not articulated the specific creditor who could set aside Zach’s gift, but a trustee need not do so. Thirteen unsecured claims have been filed; the Trustee can assume the position of any one of them. Unless the claims of Barker and. Lieblich are secured, any unsecured creditor may pursue a fraudulent-conveyance action under Illinois law. Even if he cannot point to creditors whose claims total *159 more than the value of the land, the Trustee can avoid the transaction entirely. Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931). The whole value of the asset then is distributed among creditors of the estate. 11 U.S.C. § 551. The wisdom of this approach has been questioned, see Douglas G. Baird, The Elements of Bankruptcy 104 (2d ed.1993); Thomas H. Jackson, The Logic and Limits of Bankruptcy Law 79-83 (1986), but this entrenched rule is the source of the dilution that Barker and Lieblich want to escape.
Barker and Lieblich are secured creditors if they have a lien on Zach’s land, 11 U.S.C. § 506(a), which depends on state law. Butner v. United States, 440 U.S. 48, 54-55, 99 S.Ct. 914, 917-18, 59 L.Ed.2d 136 (1979). Under Illinois law, when the judgment against Leonard became final, Barker and Lieblich could have obtained a Ken on all of Leonard’s real property by fihng a copy of the judgment with the appropriate county office. See 735 ILCS 5/12-101. But by then Leonard had transferred the parcels to Zach, and a potential fraudulent-conveyance action to recover the land is not itself real property of the sort covered by § 5/12-101. De Martini v. De Martini, 385 Ill. 128, 133, 52 N.E.2d 138, 140 (1943); Hallorn v. Trum, 125 Ill. 247, 252, 17 N.E. 823, 824 (1888). Barker and Lieblich say, however, that they obtained an “equitable Ken” on the lots by filing suit under the Uniform Fraudulent Transfer Act, 740 ILCS 160/1-12. Actually, they vacillate between arguing that the Ken is created by fUing the fraudulent-conveyance action and by filing the lis pendens. But the IlKnois lis pendens statute does not give the filer a Ken, see 735 ILCS 5/2-1901, for filing requires neither the title holder’s consent nor judicial intervention. The lis pendens just gives notice to purchasers of the land that there may be superior interests. Cf. Connecticut v. Doehr, 501 U.S. 1, 29, 111 S.Ct. 2105, 2122, 115 L.Ed.2d 1 (1991) (“The lis pendens itself creates no additional right in the property on the part of the plaintiff, but simply allows third parties to know that a lawsuit is pending”) (Rehnquist, C.J., concurring). So Barker and LiebKeh can prevail only if IlK-nois gives them a security interest in the land just because they were the first creditors to discover the transfer to Zach and act on that knowledge by filing suit. Whether such a “race” rule would induce creditors to invest wastefully in attempting to be the first to discover fraudulently conveyed assets, which a trustee is likely to turn up anyway, is not for us to decide; we need only ascertain whether IlKnois has this rule.
Barker and Lieblich cite several cases in which a judgment creditor who filed suit to set aside a fraudulent conveyance achieved priority over a judgment creditor who obtained (and filed) his judgment first but filed his fraudulent-conveyance suit second. Union National Bank of Chicago v. Lane, 177 Ill. 171, 52 N.E. 361 (1898); Rappleye v. International Bank, 93 Ill. 396 (1879); Snow v. Hogan, 312 Ill.App. 636, 38 N.E.2d 934 (2d Dist.1942). These cases are old, and the lack of recent opinions is not a sign that the rule is so ingrained that the subject is no longer worth contesting. In each of these cases the judgment creditor filed a “creditor’s bill.” The creditor’s bül asks a court of equity to force the debtor to transfer intangible property to the judgment creditor or sell it to satisfy the judgment. See Garrard Glen, Fraudulent Conveyances and Preferences § 26 at 51-52 (1940). (Intangible property only, because tangible property could be seized by the sheriff pursuant to a writ of execution.) As an equitable remedy, a creditor’s bill was available to the judgment creditor only if he had exhausted his legal remedies. Hart v. Oliver, 296 Ill. 209, 129 N.E. 833 (1921); Gore v. Kramer, 117 Ill. 176, 183, 7 N.E. 504, 507 (1886); Schaeffer v. Zaltsman, 29 Ill.App.3d 1011, 331 N.E.2d 212 (1st Dist.1975). Filing a creditor’s bill gave a creditor priority over other unsecured creditors, Fraudulent Conveyances at § 28, called an “equitable Ken” in Illinois. See, e.g., Union National Bank, 177 Ill. at 174, 52 N.E. at 362; Hallorn, 125 Ill. at 253, 17 N.E. at 824; Bank of Lyons v. Schultz, 22 Ill.App.3d 410, 415, 318 N.E.2d 52, 56 (1st Dist.1974). The Ken arising from a creditor’s biK was respected in bankruptcy, even if the proceeding had yet to produce a final judgment in favor of the fifing creditor — at least under the Bankruptcy Act of 1898. Straton v. New, 283 U.S. 318, 51 S.Ct. *160 465, 75 L.Ed. 1060 (1931); Metcalf v. Barker, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122 (1902). Barker and Lieblich have not cited either of these Supreme Court cases, either because they think the cases are not persuasive under the 1978 Code — unlikely, for both eases are still cited, see, e.g. Landau v. Vallen, 895 F.2d 888, 894 (2d Cir.1990) (citing Straton); In re Wind Power Systems, Inc., 841 F.2d 288, 291 (9th Cir.1988) (citing Met-calf) — or because they realize the fatal flaw in relying on them: Barker and Lieblich did not file a creditor’s bill. Indeed, they could not have done so, for in 1982 Illinois abolished the creditor’s bill. P.A. 82-280. See also 110 Ill.Rev.Stat. ¶ 399 (1981) (repealed); 22 Ill.Rev.Stat. ¶ 49 (1973) (repealed).
Barker and Lieblich play down the difference between a creditor’s.bill and their suit under the UFTA. They insist that the equitable lien cases are part of the common law of Illinois, which still supplements the UFTA, 740 ILCS 160/11, and observe that the Trustee could not find an Illinois case overruling Rappleye and its successors. For their part, Barker and Lieblich could not find a case discussing an equitable lien arising from filing an UFTA suit, and our search did not reveal one. Section 8(a) of the Act suggests why. It allows a creditor seeking to set aside a fraudulent conveyance to procure:
(2) an attachment or other provisional remedy against the asset transferred or, other property of the transferee in accordance with the procedure prescribed by the Code of -Civil Procedure;
(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure,
(A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
(B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
(C) any other relief the circumstances may require.
740 ILCS 160/8(a). This section, combined with § 9-301(3) of the UCC, 810 ILCS 5/9-301(3) (“A ‘lien creditor’ means a creditor who has acquired a lien on the property involved by attachment, levy or the like”), sets up a straightforward way for a judgment creditor to obtain priority in bankruptcy. Barker and Lieblich did not use any of these remedies. Instead they want us to follow the old eases finding equitable liens from the mere filing of a suit. Using the approach of the prior law now that it has been displaced by the ufta and the UCC would be a bad idea, and we are confident that Illinois would not follow such a path. Why would Illinois courts hold that filing the ufta action alone creates a lien, when the Act explicitly provides a method for the filer to attach property and obtain a lien? Recall that a creditor’s bill was an equitable remedy, available only after the creditor had exhausted all legal remedies. Barker and Lieblich did not use, and therefore did not exhaust, the statutory remedies available to them.
Barker and Lieblich have not used the devices now available in Illinois to create liens. They are therefore unsecured creditors, and the judgment is AFFIRMED.